**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

DEE DEIDRE FARMER,

      Plaintiff - Appellee,

v.

WILLIAM PERRILL, Warden; J.
GRAHAM, Chief Correctional
Supervisor; DOUGLAS GESNER,
Correctional Officer,

      Defendants - Appellants.

No. 00-1395

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 93-D-1255)**

---

Kathleen L. Torres, Assistant United States Attorney (Thomas L. Strickland,
United States Attorney, and Michael E. Hegarty, Assistant United States Attorney,
were also on the briefs) for Defendants-Appellants.

John S. Pfeiffer of Castle Rock, Colorado (Antony M. Noble of Perkins Coie,
Denver, Colorado, with him on the brief) for Plaintiff-Appellee.

---

Before **KELLY** and **HOLLOWAY** , Circuit Judges, and **SHADUR** , District
Judge. *

---

    *The Honorable Milton I. Shadur, Senior United States District Judge for the
Northern District of Illinois, sitting by designation.

**HOLLOWAY**, Circuit Judge.

---

Plaintiff/appellee Dee Farmer brought suit in 1993 against three individual officers of the Englewood Federal Correctional Facility (FCI Englewood) in Littleton, Colorado, alleging that the defendants/appellants had infringed her constitutional rights by conducting strip searches, and seeking money damages under *Bivens v. Six Unnamed Federal Narcotics Agents*, 403 U.S. 388 (1971).[1] Defendant/appellant Perrill was the warden at the institution at the relevant time, defendant Graham was Chief Correctional Officer and defendant Gesner was an officer assigned to the property room who conducted one of the allegedly unlawful searches.

Defendants filed a motion to dismiss or alternatively for summary judgment which the district court treated as a motion for summary judgment. The district court determined that defendants had not shown that they were entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and its progeny and so denied the motion. Defendants bring this appeal, invoking our

---

[1] The Court held in *Bivens* that federal officials may be sued in their individual capacities for violations of Fourth Amendment rights. As the district judge noted in his Order Affirming and Adopting Magistrate Judge's Recommendation, Aplt. App. 191, the complaint alleged violations under the Fourth and Fifth Amendments of the United States Constitution. However, the Fifth Amendment is not argued on appeal and the case centers on the averments of Fourth Amendment violations.

jurisdiction under 28 U.S.C. § 1291, which authorizes appeals from final decisions of the district courts. Defendants contend that the order denying their motion for summary judgment is appealable under section 1291 as interpreted in cases such as *Mitchell v. Forsyth*, 472 U.S. 511 (1985), and *Johnson v. Jones*, 515 U.S. 304 (1995). As further explained below, we conclude that we do have jurisdiction and we affirm the orders of the district court.

I

Plaintiff describes herself as a pre-operative, male-to-female transsexual.[2] Although she is biologically male, she prefers to be referred to as feminine, and we will respect that wish. During the time of the events underlying this appeal, she was incarcerated in the male population, as apparently she has been at all times that she has been in the federal prison system. She does not challenge that classification in this action.

The events at issue occurred while plaintiff was incarcerated in the Special Housing Unit (SHU) at FCI-Englewood. The SHU is a high security area divided into an administrative detention unit and a disciplinary detention unit. Plaintiff had been in both divisions during her time in the SHU. Under the prison's

---

[2]For an explanation of the term transsexual and the specific history of Farmer, see *Farmer v. Brennan*, 511 U.S. 825, 829-30 (1994), and *Farmer v. Haas*, 990 F.2d 319, 320-21 (7th Cir. 1993).

policies, prisoners in the SHU who leave their cells to go to the recreation yard must submit to a "visual search" on return to the cell block. A visual search requires the inmate to completely disrobe and "present" all areas of the body, including the genitals and anus, for inspection.

Plaintiff protested that the strip searches were unnecessary because the recreation yard was secure and the inmates were closely supervised there. She also alleged that the searches were conducted in an open area where she was viewed by a number of other inmates, in spite of the Bureau of Prisons' own regulation (28 C.F.R. § 552.11) requiring visual searches to "be made in a manner designed to assure as much privacy to the inmate as practicable." Her administrative complaints were fruitless, and she commenced this lawsuit in 1993.

II

The defendants' motion for summary judgment was referred to a magistrate judge for a recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The magistrate judge recommended that the motion be denied. The district judge subsequently agreed with all key portions of the magistrate judge's recommendation and denied the motion. The judge also denied defendants' motion for reconsideration.

The district judge began his analysis by noting that the Supreme Court has

mandated that a balancing approach be applied because the reasonableness of various limitations on inmates' constitutional rights is not capable of precise definition. Thus, the district judge sought to balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The judge noted that the Court in *Bell* found that body cavity searches of detainees on less than probable cause after contact visits may be reasonable. The court further noted that since *Bell v. Wolfish*, courts have approved strip searches that were conducted every time prisoners in administrative segregation, such as plaintiff, left their cells for any purpose.[3]

Defendants asserted in their brief in support of their motion that the searches were conducted in the privacy of a shower stall, but plaintiff responded with affidavits maintaining that the searches were conducted in an open area in full view of all other inmates and a number of staff. The district judge acknowledged that in certain circumstances searches conducted in conditions even less private than those alleged by the plaintiff have been held not to have violated inmates' constitutional rights. The court concluded, however, that these authorities were insufficient to demonstrate that the defendants in this proceeding were entitled to qualified immunity because

---

[3]The district court's order cited *Arruda v. Fair*, 710 F.2d 886 (1st Cir. 1983); *Franklin v. Lockhart*, 883 F.2d 654 (9th Cir. 1989); and *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988).

those cases turned on a showing that important security considerations made it necessary to conduct the searches in a less than private area, and that no reasonable alternatives existed. In other words, the law is clear that, although strip searches of prisoners may be reasonable under the Fourth Amendment, they must be conducted in such a manner as to protect inmates' privacy rights to the extent possible given legitimate institutional security interests.

Order at 4, Aplt. App. 194.

The judge went on to find that there were disputed issues of fact about whether the searches were conducted in an open area. He also held that the defendants had not "satisfactorily shown" that there were legitimate penological reasons for the manner in which the searches were conducted.

III

A

This court is authorized under 28 U.S.C. § 1291, to review "final decisions" of the district courts. Orders denying qualified immunity to public officials come within the meaning of "final decisions" to the extent that they present only issues of law for review:

Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law. A determination that the law allegedly violated by the defendant was clearly established at the time of the challenged actions is an abstract issue of law that is immediately appealable. A determination that under either party's version of the facts the defendant violated clearly established law is also immediately appealable. However, government officials cannot

-6-

appeal pretrial denial of qualified immunity to the extent the district court's order decides nothing more than whether the evidence could support a finding that particular conduct occurred. An order denying qualified immunity on summary judgment is not appealable if it merely determines the facts asserted by the plaintiff are sufficiently supported by evidence in the record to survive summary judgment.

*Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997) (citations omitted).

Defendants have framed the issues on appeal in light of these principles, accepting for purposes of this appeal the plaintiff's evidence that the searches were conducted in the open.[4] In other words, we have for review a "determination that under [the plaintiff's] version of the facts the defendant[s] violated clearly established law . . . ." Id. Therefore, we have jurisdiction over these issues.[5]

B

Our standard of review for such issues is well established:

---

[4]Appellate jurisdiction in cases of this type is clear when the defendant does not dispute the facts alleged by the plaintiff. Alternatively, as here, if the defendant does dispute the plaintiff's allegations "the defendant must nonetheless be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Berryman v. Rieger* , 150 F.3d 561, 563 (6th Cir. 1998).

[5]There is an argument that a "motion to reconsider" is not effective to suspend the time for taking an appeal from an order denying summary judgment on qualified immunity grounds. *See Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999). But this circuit is committed to the other view. *See Hubbert v. City of Moore*, 923 F.2d 769, 771 (10th Cir. 1991) (previous appeal, commenced during pendency of motion to reconsider, had been dismissed as prematurely brought); *see also Farmer v. Perrill*, 275 F.3d 958 (10th Cir. 2001) (jurisdiction exercised without question; procedural history virtually identical to that presented in the instant case).

We review the district court's resolution of qualified immunity issues on summary judgment de novo.  When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the plaintiff must show the law was clearly established when the alleged violation occurred and must come forward with sufficient facts to show the official violated that clearly established law. The defendant bears the normal summary judgment burden of showing no material facts that would defeat the qualified immunity defense remain in dispute.  For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains.

> The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997) (quoting *V-1 Oil Co. v. Means*, 94 F.3d 1420, 1423 (10th Cir. 1996)) (internal citations omitted).

We begin with the premise that inmates retain some right to privacy: "Although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish altogether."  *Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982).  A second well established premise is that "a strip search is an invasion of personal rights of the first magnitude."  *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir. 1993).

In the context of prisoners' civil rights litigation, the Supreme Court has instructed that

> when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. . . . . Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.

*Turner v. Safley*, 482 U.S. 78, 89 (1987). These statements by the Court were made in its opinion upholding the validity of prison regulations of correspondence between state prisoners while invalidating restrictions on marriage by such prisoners. *Id*. at 81. The Court declared in 1979, fourteen years before the searches at issue here, that determination of the constitutionality of a strip search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, *the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.*" *Bell v. Wolfish,* 441 U.S. 520, 559 (1979) (emphasis added).[6]

Following that decision, we held that a strip search of a motorist detained for a minor traffic offense, which was conducted in a lobby area in view of ten to twelve persons, violated his constitutional rights because there was neither a

---

[6]The search at issue in *Bell* was a body cavity search even more intrusive than the searches at issue here. We do not think that this fact negates the relevance of the general standard quoted in the text.

sufficient security justification for the search, nor any justification for conducting the search in a public area. *Hill v. Bogans*, 735 F.2d 391 (10th Cir. 1984). We said there that *Bell v. Wolfish* requires courts "to consider the scope of the particular intrusion *and the manner and place in which it is conducted*." 735 F.2d at 394 (emphasis added).

Thus, we conclude that plaintiff has identified a well established right, the right not to be subjected to a humiliating strip search in full view of several (or perhaps many) others *unless the procedure is reasonably related to a legitimate penological interest.* We also conclude that the identified right of the plaintiff was clearly established at the time of the May 1993 search in question so that a reasonable officer would have known that a decision to subject inmates to demeaning searches in public requires justification. All of the principles were established in cases we have cited which were decided well before the May 1993 conduct in question.

The defendants contend that the district court erred in denying their motion for summary judgment because the challenged searches were reasonably related to legitimate penological interests as required by *Turner v. Safley*. More specifically, defendants challenge the district court's assertion that "the law is clear that, although strip searches of prisoners may be reasonable under the Fourth Amendment, they must be conducted in such a manner as to protect

inmates' privacy rights to the extent possible given legitimate institutional interests." Order at 4, Aplt. App. 194. Defendants contend that this is an incorrect statement of the law because the Court expressly rejected a "least restrictive alternative" test in *Turner*, 482 U.S. at 90-91.

Defendants are correct that the Court in *Turner* rejected a least restrictive alternative test. However, we conclude that the quoted language from the district court's order, when taken in context, does not indicate the application of a least restrictive alternative test. We believe instead that the district court's holding was only that the defendants cannot altogether ignore plaintiff's privacy rights whether or not compelled to do so by valid and important penological interests.

This is the crux of the matter, as we see it. The district court found that there was an issue of fact as to where the searches were conducted. We emphasize that in this appeal we are assuming that the searches were conducted in an open area visible to a number of other inmates and staff. Defendants do not appear to contend that strip searches may be conducted without regard for privacy without justification. We would be forced to reject that contention. As shown above, it is clear that we must consider the justification for conducting the searches in the open.

The court did not resolve the issue of the defendants' need to conduct the searches in an open area. Defendants offered evidence on the issue, and plaintiff

offered her own evidence attempting to call into question the justifications proffered by the defense. Plaintiff also suggested alternatives to the strip searches.[7] The district judge merely held that there were genuine issues of material fact precluding summary judgment on the justification for conducting searches in the open area. The judge said: "I agree with Magistrate Judge Borchers that there are disputed issues of fact about whether the strip searches were conducted in an open area. Further, I agree with the Magistrate Judge that Defendants have not satisfactorily shown that there were legitimate penological reasons . . . to conduct searches in this manner . . . ." Aplt. App. at 194. It is not the function of this court to resolve such disputed issues of fact in this appeal.

Defendants argue, however, that the district court erred by placing the burden on them to justify their policy, rather than placing the burden on plaintiff to identify "an alternative that fully accommodates her rights 'at de minimis cost to valid penological interests.'" Appellants' Opening Brief at 21 (quoting *Turner*, 482 U.S. at 91).[8] We are not persuaded that the district judge erred. We reiterate

_____

[7]Plaintiff repeats her arguments on these factual points on appeal. We do not deal with her arguments for the same reason that we do not deal with defendants' factual justification for conducting the searches in an open area. The district judge did not resolve these factual disputes, and it is not our function to do so. As noted, our jurisdiction in this appeal is limited to issues of pure law.

[8]We note that defendant's contention appears to distort the *Turner* analysis somewhat. The judge said that a plaintiff's identification of an alternative could be considered as evidence that the prison's practice does not satisfy the reasonable

(continued...)

-12-

that the district judge held only that genuine issues of material fact precluded summary judgment on the defendants' legitimate, penological need for conducting the searches in an open area. We do not agree with defendants that the district judge misallocated the burden of persuasion. Defendants proffered evidence of their justification, the plaintiff disputed that evidence, and the district judge found that the matter could not be resolved at the summary judgment stage. That is all.

IV

As noted at the outset of our analysis, determining the constitutionality of the searches at issue requires a balancing of the rights of the inmates and the needs of the prison's administration. On one hand, infringements on prisoners' constitutional rights must not be "arbitrary or irrational," nor an "exaggerated response" to security needs. *Turner v. Safley*, 482 U.S. at 90. On the other hand, courts have been extremely deferential to the decisions made by prison administrators, recognizing that

> [r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of

---

[8](...continued)
relationship standard, but did not say that a plaintiff must in all cases identify such an alternative.

those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Id.* at 84-85.

The record here is not sufficient for making the ultimate determination. Our disposition does not indicate, nor even suggest, any view on whether the searches will eventually pass muster. We decide only what is before us now, just as the district court did.

The orders of the district judge are

**AFFIRMED**.