**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DARREL ALAN HYBERG, JR.,

    Plaintiff - Appellant,

v.

KEN ENSLOW; TOM RITTENHOUSE;
TIM QUINN; MIKE CUNNINGHAM,

    Defendants - Appellees.

No. 19-1155
(D.C. No. 1:18-CV-00014-RM-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Darrel Alan Hyberg, Jr., appeals the dismissal of his pro se complaint alleging

prison staff subjected him to retaliation and unreasonable strip searches in violation

of his First and Fourth Amendment rights. We affirm.

I

Hyberg is an inmate at the Sterling Correctional Facility, where he works at

the Colorado Correctional Industries Seating Factory. According to the complaint,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

"[s]trip searches are a routine part of life for inmates at Sterling," and "Hyberg can be subjected to a strip search every time he enters or leaves the Seating Factory at the beginning or end of his shift." R. at 11, para. 1-2. Although Hyberg has a medical condition that makes him especially sensitive to searches, his claims stem from two searches in particular.

First, on January 24, 2017, Defendant Rittenhouse ordered Hyberg to present his body for visual inspection after completing his shift at the Seating Factory. Defendant Enslow conducted the search. Hyberg entered the common area used for strip searches, where three other inmates were present. He entered one of four booths, which "provided no real privacy due to the height" and depth of the walls, and because there were "no screens or privacy barriers." *Id.* at 14, para. 24. While Hyberg was naked, Enslow ordered him to lift his arms, put his fingers in his mouth to demonstrate he was not concealing anything, separate his penis from his scrotum and lift his scrotum, turn around and lift his feet to inspect between his toes, bend over and spread his buttocks, and squat and cough. Hyberg performed these movements in view of three inmates, two of whom were less than five feet away. On February 13, 2017, Hyberg filed a grievance complaining that this search violated prison regulations. Afterwards, the booths used for the strip searches were rebuilt and a curtain was installed in one booth.

The second strip search at issue was conducted on April 17, 2017. Again, Rittenhouse ordered Hyberg to submit to a strip search at the end of his shift. Defendant Quinn conducted the search, and as before, three other inmates were in the

2

common area where the search was performed. Quinn directed Hyberg to the booth with the curtain and said, "You get the cubicle with the curtain, [j]ust for you[.]" *Id.* at 18, para. 56 (internal quotation marks omitted). He required Hyberg to perform the same movements as before, but after giving the final command, Quinn immediately stepped back and purposely allowed another inmate to walk between himself and Hyberg so the other inmate could see Hyberg naked. Surprised, the other inmate raised his hands and said, "Whoa-whoa-whoa," as he walked out of the search area. *Id.* at 19, para. 65 (capitalization omitted). The next day, curtains were installed on the other booths and a sign was displayed, stating, "Stop Read and Listen[.] No Entrance or Exit Without Staff Approval[.]" *Id.*, para 68.

Based on these allegations, Hyberg asserted Fourth Amendment unreasonable search claims against Rittenhouse, Enslow, Quinn, and their supervisor, Defendant Cunningham. Hyberg also brought a First Amendment retaliation claim against Quinn, alleging Quinn told him to use the booth with the curtain "in a very demeaning and derogatory way" in retaliation for filing the February 13 grievance. *Id.* at 28, para. 123. Defendants moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6), and in his response, Hyberg sought leave to amend his complaint, although he provided no new factual allegations. He did, however, separately file a "supplement" to his complaint in which he alleged that after he complained about the searches, he stopped receiving monthly performance evaluations for his work at the Seating Factory. *Id.* at 117. Although he continued working, he averred that when he finally did receive his evaluations, he noticed his

3

performance scores were lower than his previous scores and that the lower scores coincided with his complaints about the searches. Hyberg therefore sought to bring two additional retaliation claims, one against Quinn for giving him lower scores and the other against Enslow for withholding the evaluations.

The district court adopted a magistrate judge's report and recommendation and dismissed the complaint, concluding that Hyberg failed to state a violation of either the First or the Fourth Amendment. The court also denied him leave to amend the complaint, ruling that amendment would be futile because the proposed allegations in the supplement still failed to state a First Amendment claim.

## II

"We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). "In reviewing the district court's dismissal pursuant to Rule 12(b)(6), we assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). We also must be mindful that:

> [p]risons are a unique environment, and the Supreme Court has repeatedly recognized that the role of the Constitution within their walls is quite limited. Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison. Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts.

*Gee*, 627 F.3d at 1185. Accordingly, our analysis of the plausibility of Hyberg's claims must be cognizant of the prison context underlying his allegations.

4

## A. *Fourth Amendment*

Hyberg claims that defendants subjected him to unreasonable public strip searches in violation of the Fourth Amendment. "The Fourth Amendment prohibits only unreasonable searches," *Bell v. Wolfish*, 441 U.S. 520, 558 (1979), and while an inmate's right to privacy "does not vanish altogether," it "must yield to the penal institution's need to maintain security," *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002) (internal quotation marks omitted). Indeed, the Supreme Court has held that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012). In evaluating the reasonableness of a search, including a search of the nature alleged here, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. These factors aim to "[b]alanc[e] the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Id.* at 560. "[A] regulation impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Florence*, 566 U.S. at 326 (internal quotation marks omitted).

The scope of the searches here was undeniably invasive. Indeed, "[t]here can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993). At the same time, however, there are obvious security concerns inherent when an inmate will be

5

placed in the general prison population. *Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008). Hyberg was returning to general population when he was subjected to the searches at the end of his shifts at the Seating Factory. There were therefore legitimate security interests served by the searches. Moreover, the searches were conducted in a uniform manner, following routine protocol, in a designated area with limited access for other inmates and staff. *See Farmer*, 288 F.3d at 1260 (recognizing a strip search may be unreasonable if conducted in the open, "visible to a number of other inmates and staff," and without regard for the inmate's privacy interests); *see also id.* at 1261 ("[I]nfringements on prisoners' constitutional rights must not be arbitrary or irrational, nor an exaggerated response to security needs." (internal quotation marks omitted)); *Daughtery v. Harris*, 476 F.2d 292, 294 (10th Cir. 1973) (rejecting contention that rectal cavity searches must be conducted by medical doctors in complete privacy). Although Hyberg alleged Quinn conducted the April 17 search "in a very demeaning and derogatory way," R. at 28, para. 123, his conclusory allegations do not support an inference of abuse, *see Gallagher*, 587 F.3d at 1068 ("Conclusory allegations are not enough to withstand a motion to dismiss."). He alleged Quinn said, "You get the cubicle with the curtain, [j]ust for you," R. at 18, para. 56 (internal quotation marks omitted), and then "maliciously" allowed another inmate to walk between them, *id.* at 19, para. 62. But this is not the type of conduct courts have found to be needlessly intrusive or abusive. *Cf., e.g., Hayes v. Marriott*, 70 F.3d 1144, 1147 (10th Cir. 1995) (reversing grant of summary judgment on Fourth Amendment claim where inmate alleged he was subjected to a

6

video recorded "body cavity search [conducted] in the presence of over 100 people, including female secretaries and case managers from other buildings"); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (holding inmate stated an Eighth Amendment claim by alleging that during search, guards made "ribald comments and sexually explicit gestures," "forced him to perform sexually provocative acts," and female guards "were neither mere passersby nor performing [a] legitimate penological function," but "were instead invited spectators" (internal quotation marks omitted)).  Balancing the relevant considerations, Hyberg's allegations fail to state a plausible violation of the Fourth Amendment.

## B. First Amendment

Hyberg also claims Quinn retaliated against him for filing the February 13 grievance by telling him "in a very demeaning and derogatory way" that the booth with the curtain was just for him.  R. at 28, para 123.  "[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks omitted).  The First Amendment protects inmates from retaliation for filing administrative grievances. *See Gee*, 627 F.3d at 1189.  To state a First Amendment retaliation claim, an inmate must allege:

> (1) that [he] was engaged in constitutionally protected activity;
> (2) that the defendant's actions caused [him] to suffer an injury that
> would chill a person of ordinary firmness from continuing to engage
> in that activity; and (3) that the defendant's adverse action was
> substantially motivated as a response to [the inmate's] exercise of
> constitutionally protected conduct.

7

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). This third element requires an inmate to establish "that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks omitted).

Defendants concede Hyberg satisfied the first element by filing the February 13 grievance. *See* Aplee. Br. at 16. Nonetheless, the claim falters on the second element because Quinn's isolated comment would not cause a person of ordinary firmness to refrain from filing a grievance. The standard for assessing the chilling effect on protected activity is objective, and "a trivial or de minimis injury will not support a retaliat[ion] . . . claim." *Shero*, 510 F.3d at 1203 (internal quotation marks omitted). Hyberg alleged Quinn performed the April 2017 search "in a very demeaning and derogatory way," R. at 28, para. 123, because he said, "You get the cubicle with the curtain, [j]ust for you," *id.* at 18, para. 56 (internal quotation marks omitted). But even if Quinn intended this comment to be derogatory or sarcastic, it was trivial and would not deter a person of ordinary firmness from filing a grievance. *See Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (recognizing that "insulting, disrespectful, or sarcastic comments directed at an inmate," while "unprofessional and unpleasant," "do not constitute adverse action sufficient to support a retaliation claim"). Hyberg failed to state a plausible First Amendment claim.

8

*C. Denial of Leave to Amend*

Finally, Hyberg contends the district court erred in denying him leave to amend his complaint. Because the district court denied leave to amend on grounds of futility, we review the legal basis for the finding of futility de novo. *See Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (internal quotation marks omitted).

Hyberg sought to add two First Amendment retaliation claims, one against Quinn for reducing his work performance scores and the other against Enslow for withholding his performance evaluations. Although filing a grievance is protected activity for purposes of satisfying the first element of a retaliation claim, Hyberg's supplemental allegations fail to satisfy the second element under the particular facts of this case. Indeed, neither the reduction of Hyberg's scores, nor the withholding of his evaluations, would deter a person of ordinary firmness from filing a grievance under the facts alleged here because both actions were entirely inconsequential to Hyberg. The supplemental allegations indicate that he continued working uninterrupted at the Seating Factory, without any ramifications at all. He alleged that he did not even know Quinn was giving him lower scores for almost two years—from April 2017 until January 2019. And while it is unclear whether he knew Enslow was withholding his evaluations during that time, there are no allegations that Hyberg requested them or suffered any adverse action because he did not have access to them. Under these particular circumstances, the alleged misconduct would not deter

9

a person of ordinary firmness from engaging in protected activity. Hyberg's claims would be subject to dismissal, and therefore, the district court properly denied him leave to amend.

## III

The judgment of the district court is affirmed. Hyberg's motion to proceed without prepayment of fees is granted, and he is reminded of his obligation to continue making partial payments toward his appellate filing fee until the entire balance is paid in full. *See* 28 U.S.C. § 1915(b)(1)-(2).

Entered for the Court

Bobby R. Baldock
Circuit Judge

10