FILED
United States Court of Appeals
Tenth Circuit

December 2, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DONALD GEE,

     Plaintiff-Appellant,

v.

MIKE PACHECO, in his official capacity as Unit Manager, Wyoming Department of Corrections State Penitentiary; VANCE EVERETT, in his official capacity as (former) Warden, Wyoming Department of Corrections State Penitentiary; CARL VOIGTSBERGER, in his official capacity as Classification and Housing Manager, Wyoming Department of Corrections State Penitentiary; SCOTT ABBOTT, in his official capacity as Warden, Wyoming Department of Corrections State Penitentiary; RONALD G. RUETTGERS, in his official capacity as Associate Warden, Wyoming Department of Corrections State Penitentiary; T. HILL, in his official capacity as Sergeant, Wyoming Department of Corrections State Penitentiary; NADIN SHAH, in his/her official capacity as Sergeant, Wyoming Department of Corrections State Penitentiary; DAVID EVERETT, in his official capacity as Correction Officer, Wyoming Department of Corrections State Penitentiary; BRIAN WISEMAN, in his official capacity as Correction Officer, Wyoming Department of Corrections State

No. 08-8057
(D.C. No. 2:06-CV-00029-WFD)
(D. Wyo.)

Penitentiary; DESIREE LOPEZ, in her official capacity as Mail Room Officer, Wyoming Department of Corrections State Penitentiary; LENNY STILLWELL, in his official capacity as Sergeant, Wyoming Department of Corrections State Penitentiary; GARRY HALTER, in his official capacity as Lieutenant, Wyoming Department of Corrections State Penitentiary; S. KELLEY, in his official capacity as Corporal, Wyoming Department of Corrections State Penitentiary; JOHN COYLE, in his official capacity as physician to the Wyoming State Penitentiary,

Defendants-Appellees.

---

**ORDER**

---

Before **HARTZ**, **MCKAY**, and **ANDERSON**, Circuit Judges.

---

This matter is before the court on the motion of Public Justice, P.C., the American Civil Liberties Union, and the Prisoners' Rights Project of the Legal Aid Society of the City of New York to file an amici brief urging amendment of the opinion filed on October 26, 2010. The motion for leave to file an amici brief is GRANTED and the Clerk is directed to file the proposed amici brief as of the date of the filing of the motion. Amici's request for the court to amend the opinion is GRANTED IN PART. An amended opinion is attached to this order.

The Clerk is directed to withdraw the opinion filed on October 26, 2010, and to replace it with the amended opinion.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

October 26, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

DONALD GEE,

          Plaintiff-Appellant,

v.

MIKE PACHECO, in his official capacity as Unit Manager, Wyoming Department of Corrections State Penitentiary; VANCE EVERETT, in his official capacity as (former) Warden, Wyoming Department of Corrections State Penitentiary; CARL VOIGTSBERGER, in his official capacity as Classification and Housing Manager, Wyoming Department of Corrections State Penitentiary; SCOTT ABBOTT, in his official capacity as Warden, Wyoming Department of Corrections State Penitentiary; RONALD G. RUETTGERS, in his official capacity as Associate Warden, Wyoming Department of Corrections State Penitentiary; T. HILL, in his official capacity as Sergeant, Wyoming Department of Corrections State Penitentiary; NADIN SHAH, in his/her official capacity as Sergeant, Wyoming Department of Corrections State Penitentiary; DAVID EVERETT, in his official capacity as Correction Officer, Wyoming Department of Corrections State Penitentiary; BRIAN WISEMAN, in his official capacity as

No. 08-8057
(D.C. No. 2:06-CV-00029-WFD)
(D. Wyo.)

Correction Officer, Wyoming Department of Corrections State Penitentiary; DESIREE LOPEZ, in her official capacity as Mail Room Officer, Wyoming Department of Corrections State Penitentiary; LENNY STILLWELL, in his official capacity as Sergeant, Wyoming Department of Corrections State Penitentiary; GARRY HALTER, in his official capacity as Lieutenant, Wyoming Department of Corrections State Penitentiary; S. KELLEY, in his official capacity as Corporal, Wyoming Department of Corrections State Penitentiary; JOHN COYLE, in his official capacity as physician to the Wyoming State Penitentiary,

     Defendants-Appellees,

------------------------

PUBLIC JUSTICE, P.C.; THE AMERICAN CIVIL LIBERTIES UNION; THE PRISONER'S RIGHTS PROJECT OF THE LEGAL AID SOCIETY OF THE CITY OF NEW YORK,

     Amici Curiae.

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING[*] (D.C. NO. 2:06-CV-00029-WFD)**

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Donald Gee, pro se.

Hon. Bruce A. Salzburg, Wyoming Attorney General (John S. Renneisen, Deputy Attorney General, and Thomas W. Rumpke, Senior Assistant Attorney General, with him on the brief), Cheyenne, Wyoming, for Defendants-Appellees, Pacheco, Everett, Voigtsberger, Abbott, Ruettgers, Hill, Shah, Evertt, Wiseman, Lopez, Stillwell, Halter, and Kelley.

Kathleen B. Dixon, Chapin & Dixon, LLP, Casper, Wyoming, for Defendant-Appellee, John F. Coyle, D.O.

Claire Prestel, Public Justice, P.C., Washington, D.C. (Melanie Hirsch, Public Justice, P.C., Washington, D.C.; Alexander A. Reinert, Benjamin N. Cardozo, School of Law, New York, New York; Jennifer Horvath, ACLU of Wyoming, Cheyenne, Wyoming; David C. Fathi, ACLU National Prison Project, Washington, D.C.; Mark Silverstein, ACLU of Colorado, Denver, Colorado; and John Boston, The Legal Aid Society of the City of New York Prisoners' Rights Project, New York, New York, with her on the brief) for Amici Curiae.

Before **HARTZ**, **MCKAY**, and **ANDERSON**, Circuit Judges.

**HARTZ**, Circuit Judge.

Donald Gee is a prisoner in the Wyoming State Penitentiary (WSP) who represents himself before this court. On January 27, 2006, he filed in the United States District Court for the District of Wyoming a pro se civil-rights action under 42 U.S.C. § 1983 against Defendants, who are WSP officials. Mr. Gee alleged that Defendants violated his rights under the First, Eighth, and Fourteenth

Amendments to the United States Constitution.[1]  His complaint includes 154

paragraphs, many of which are repetitive.  Defendants moved to dismiss the

complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Concluding that Mr. Gee

had failed to state a claim upon which relief could be granted and that his

complaint was frivolous, the district court granted the motion and dismissed the

complaint with prejudice.

We have jurisdiction under 28 U.S.C. § 1291.  We affirm the dismissal with

prejudice of several claims because they are clearly barred by the statute of

limitations or by claim preclusion.  But we reverse the dismissal of the other

claims and remand for further proceedings.  Some of the allegations sufficiently

alleged § 1983 claims and should have been allowed to proceed.  As for the

remaining claims, although the complaint failed to allege a cause of action

adequately, it does not appear that the district court considered whether the

defects in the complaint could be cured by amendment, and amendment would not

_____

[1]Mr. Gee is a state prisoner.  The First and the Eighth Amendments apply to the states through the Fourteenth Amendment.  *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 n.1 (1996) (First Amendment); *Rhodes v. Chapman*, 452 U.S. 337, 344–45 (1981) (Eighth Amendment).  Technically, then, all of Mr. Gee's claims could be considered to be under the Fourteenth Amendment.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (acknowledging that plaintiffs may have invoked the Fourteenth Amendment simply because the Eighth Amendment applies to the states only through the Fourteenth Amendment).  For ease of analysis and to avoid confusion, we address the claims according to which amendment provides the applicable substantive protections.  *See id.*

necessarily be futile. Accordingly, the district court on remand should give

Mr. Gee an opportunity to amend his allegations with respect to those claims.

## I.    BACKGROUND

For his First Amendment claims, Mr. Gee alleged that Defendants (1) had

violated his right to communicate with persons outside the prison; (2) had

violated his right to access the courts by (a) confiscating his legal files and

hindering his access to them, (b) hindering his communications with a jailhouse

lawyer and denying access to a law library, (c) reviewing his legal files, and

(d) interfering with his legal mail; and (3) had violated his right to be free from

retaliation for having exercised his First Amendment rights. For his Eighth

Amendment claims, he alleged that Defendants (1) had transferred him to

out-of-state prisons where he suffered conditions amounting to cruel and unusual

punishment; (2) had subjected him to inhumane transport and cell conditions in

Wyoming, including the denial of basic necessities; (3) had denied him medical

treatment or rendered inadequate medical treatment for various conditions,

including a sleepwalking disorder; and (4) had assaulted him while transferring

him within the prison. And under the Fourteenth Amendment, Mr. Gee

(1) challenged Defendants' decisions (a) to transfer him to prisons in other states,

(b) to place him in an isolation cell and in segregation at WSP, and (c) to place

information in his file and classify him at certain levels; (2) challenged particular

disciplinary actions and hearings; (3) alleged that he had been deprived of

-5-

property; and (4) alleged that he had been subjected to harassment, discrimination, and equal-protection violations.

Defendants moved to dismiss the complaint for failure to state a claim.[2] They submitted numerous documents in support of their motion. Although they did not prepare a formal *Martinez* report, *see Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (per curiam) (recommending preparation by state prison officials of investigative report to present to federal court in § 1983 suit brought by prisoner), some of their submissions were grievances and grievance responses, typical of the types of documents usually tendered in a *Martinez* report. They also attached filings from Mr. Gee's prior lawsuits and a variety of prison records, including monitoring reports, internal communications, and memoranda.

The district court dismissed the claims in Mr. Gee's complaint on several different grounds. With respect to the First Amendment claims, it ruled that the access-to-the-courts claims failed to allege all the required elements of the cause of action and that the allegations supporting the other claims were too vague and conclusory or failed to establish unconstitutional regulation or action. It dismissed the Eighth Amendment claims because the record contradicted Mr. Gee's allegations of denial of basic necessities; some claims were

---

[2]Defendants' motion cited both Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim), but the district court's decision and the question on appeal involve only Rule 12(b)(6).

time-barred; the allegations regarding Mr. Gee's alleged sleepwalking disorder were frivolous; the allegations regarding his other medical conditions showed merely his disagreement with the treatment, not deliberate indifference to his conditions; and the record contradicted Mr. Gee's allegations that he was assaulted during a transfer within the WSP. As for the Fourteenth Amendment claims, the district court dismissed them because one of his equal-protection arguments was frivolous, he had no liberty interest in his classification status, he had already pursued some of his claims in a prior lawsuit, his placement in segregation was not so atypical and significant as to create a liberty interest, his claims about false information in his base file were speculative, other claims consisted entirely of conclusory allegations, and his allegations of being deprived of property did not rise to a constitutional violation because he did not allege that there was no adequate state remedy available.

## II. DISCUSSION

### A. Legal Standards for Stating a Claim

We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Howard v. Waide*, 534 F.3d 1227, 1242–43 (10th Cir. 2008). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

For many years the federal courts followed the rule that a claim can be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In 2007, however, the Supreme Court retired the *Conley* standard, stating that "*Conley*'s 'no set of facts' language has been questioned, criticized, and explained away long enough." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Although restating the fundamental rule that the court, on a motion to dismiss, must assume that all factual "allegations in the complaint are true (even if doubtful in fact)," *id.* at 555, it said the plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* The Court suggested that the test is one of plausibility, holding that to state a claim of a conspiracy under § 1 of the Sherman Act:

> requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. . . . [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel

> conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.

*Id.* at 556–57.  The Court further indicated that an allegation of parallel conduct absent context implying a meeting of the minds "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 557 (brackets and internal quotation marks omitted).

Although *Twombly* involved the Sherman Act, this court inferred that the "plausibility" standard need not be restricted to the antitrust context, but also should be applied to prisoner complaints.  *See, e.g., Howard*, 534 F.3d at 1243; *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  The Supreme Court validated this interpretation in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), where it applied *Twombly* in the context of a prisoner challenge to the conditions of his confinement.  A thorough discussion of *Iqbal* will be helpful.

Javaid Iqbal, a citizen of Pakistan and a Muslim, was arrested in the United States on charges of identification-document fraud after the terrorist attacks on September 11, 2001.  *See id.* at 1943.  He was detained at the Metropolitan Detention Center (MDC) in Brooklyn, New York, where he was designated a person "of high interest" in the investigation of the terrorist attacks.  *Id.* (internal quotation marks omitted).  He was placed in a section of the MDC known as the Administrative Maximum Special Housing Unit (ADMAX SHU), in which detainees were kept in lockdown 23 hours a day and were subjected to other

stringent security measures. *See id.* Iqbal pleaded guilty to the charges against him and was removed to Pakistan after serving a term of imprisonment. *See id.* He then filed a *Bivens* action, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against various federal officials involved in his detainment. *See Iqbal*, 129 S. Ct. at 1943. His complaint focused on his treatment while confined to ADMAX SHU. *See id.* at 1943-44. He alleged that John Ashcroft, the former Attorney General of the United States, and Robert Mueller, the Director of the Federal Bureau of Investigation, had designated him as a "person of high interest" because of his race, religion, or national origin, in violation of the First and Fifth Amendments to the Constitution. *Id.* at 1944. Specifically, he alleged that both Ashcroft and Mueller approved a "policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI," *id.* (internal quotation marks omitted), and that they both "knew of, condoned, and willfully and maliciously agreed to subject [Iqbal] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest," *id.* (brackets and internal quotation marks omitted).

The Supreme Court concluded that Iqbal had failed to state a claim entitling him to relief. *See id.* at 1954. Although the pleading standard of Fed. R. Civ. P. 8 "does not require detailed factual allegations," said the Court, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949

(internal quotation marks omitted). It explicitly adopted a plausibility standard, explaining further:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (internal quotation marks and citations omitted).

"Taken as true," the Court noted, "the[] allegations [in Iqbal's complaint] are consistent with [Ashcroft and Mueller's] purposefully designating detainees 'of high interest' because of their race, religion, or national origin." *Id.* at 1951. But in light of "more likely explanations," the Court concluded that Iqbal's allegations did "not plausibly establish this purpose." *Id.* Because the September 11 terrorist attacks were perpetrated by 19 Arab Muslim hijackers who were members of al Qaeda, an Islamic fundamentalist group, it was "no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Id.* That the policies approved by Ashcroft and Mueller represented invidious discrimination was "not a plausible

-11-

conclusion." *Id.* at 1951–52. Accordingly, the Court held that Iqbal's complaint failed to state a claim against Ashcroft and Mueller. *See id.* at 1954.

*Iqbal* establishes the importance of context to a plausibility determination. The allegations in *Iqbal*'s complaint had to be read in light of the events of September 11. Nowhere in the law does context have greater relevance to the validity of a claim than prisoner civil-rights claims. Prisons are a unique environment, and the Supreme Court has repeatedly recognized that the role of the Constitution within their walls is quite limited. Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison. Consequently, a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts. For example, as we will discuss more fully below, a prisoner claim may not be plausible unless it alleges facts that explain why the usual justifications for the complained-of acts do not apply. When every prison places legitimate restrictions on prisoner mail, a First Amendment claim of interference with mail ordinarily is not plausible absent factual allegations showing at least that the alleged interference violated prison rules or that the applicable rule was invalid, either generally or in the specific context of the claim. Without such further allegations, the prisoner's First Amendment claim is no more plausible than an antitrust claim based solely on allegations of parallel conduct.

Although the plausibility standard has been criticized by some as placing an improper burden on plaintiffs, denying them proper access to the courts, that criticism ordinarily would not apply to the restrictions on prisoner complaints described above. One of the chief concerns of critics is that plaintiffs will need discovery before they can satisfy plausibility requirements when there is asymmetry of information, with the defendants having all the evidence. But prisoners claiming constitutional violations by officers within the prison will rarely suffer from information asymmetry. Not only do prisoners ordinarily know what has happened to them; but they will have learned how the institution has defended the challenged conduct when they pursue the administrative claims that they must bring as a prerequisite to filing suit. *See* 42 U.S.C. § 1997e; *Jones v. Bock*, 549 U.S. 199, 211 (2007). Of course, if the complaint alleges that the prisoner received no explanation in the grievance process (or was coerced into not pursuing a grievance), the claim that an officer's conduct lacked justification may become plausible. To be sure, a pro se prisoner may fail to plead his allegations with the skill necessary to state a plausible claim even when the facts would support one. But ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice, *see Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[D]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." (brackets and

-13-

internal quotation marks omitted)); and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint, *cf. Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (reversing dismissal with prejudice, in part because of district court's failure to explain to pro se plaintiff what is required by Fed. R. Civ. P. 8).

**B.      Materials That Can Be Reviewed on Motions Under Fed. R. Civ. P. 12(b)(6)**

Before determining whether Mr. Gee's complaint adequately alleges his claims under the principles discussed above, we must address the materials examined by the district court in ruling on the Rule 12(b)(6) motion. As discussed above, Defendants supported their motion with numerous documents, and the district court cited portions of those materials in granting the motion. Such reliance was improper.

Generally, the sufficiency of a complaint must rest on its contents alone. *See, e.g., Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) ("The district court's disposition of the complaint was irregular. Although it characterized its action as a dismissal for failure to state a claim, the court did not restrict itself to looking at the complaint."). There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference, *see Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oxendine*, 241 F.3d at 1275 (documents attached as exhibits to the complaint); (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (3) "matters of which a court may take judicial notice," *Tellabs*, *Inc.*, 551 U.S. at 322. *Martinez* reports are not within the exception unless "the plaintiff challenges a prison's policies or established procedures and the *Martinez* report's description of the policies or procedures remains undisputed after plaintiff has an opportunity to respond." *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. *See* Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the *Martinez* report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."); *Janke v. Price*, 43 F.3d 1390, 1392 (10th Cir. 1994) (district court erred in using *Martinez* hearing to resolve disputed factual issues); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (*Martinez* "process is designed to aid the

court in fleshing out possible legal bases of relief from unartfully drawn pro se prisoner complaints, not to resolve material factual issues").

Defendants relied on the *Jacobsen* exception, asserting that their attached documents were referred to in Mr. Gee's complaint and central to his claims. But we are not convinced that *all* the documents fit this exception, especially the voluminous grievances and prison responses. And even assuming that the *Jacobsen* exception applied and the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment without notice to Mr. Gee. In two instances the district court adopted Defendants' version of the facts in concluding that Mr. Gee did not state a claim. *See* R. Doc. 74 at 10 (dismissing claim of denial of hygiene items because of Defendants' representations that Mr. Gee's hygiene items were available upon request); *id.* at 13 (with regard to allegations of assault, accepting Defendants' representation that their review of videotapes showed no use of force).

Nevertheless, "[t]he failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is [not] reversible error [if] the dismissal can be justified without considering the outside materials." *GFF Corp.*, 130 F.3d at 1384. We therefore proceed to examine the complaint and discuss the claims without reference to Defendants' materials.

-16-

## C.    Mr. Gee's Complaint

### 1.    Paragraphs That Sufficiently Allege a Constitutional Violation

A few of the paragraphs in Mr. Gee's complaint sufficiently allege a violation of the First or Eighth Amendment.

#### a.    First Amendment Claims

##### (1)    Right to Free Speech

Several of Mr. Gee's allegations involve his First Amendment right to free speech, in particular his right to communicate with persons outside the prison. *See Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).  In the First Amendment context, the Supreme Court has acknowledged that "federal courts must take cognizance of the valid constitutional claims of prison inmates.  Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted).  It also has recognized, however, that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* (internal quotation marks omitted).  Accordingly, prisoners' rights may be restricted in ways that "would raise grave First Amendment concerns outside the prison context." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  In particular, "when a prison regulation impinges on inmates' constitutional rights, the regulation is

valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

The question with regard to Mr. Gee's First Amendment claims is, in light of *Turner*'s deferential review and the plausibility standard of *Twombly* and *Iqbal*, how much does Mr. Gee have to plead to state an adequate claim? As discussed above, he has to plead sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. He must do more than plead facts that establish "a sheer possibility that a defendant has acted unlawfully," or "facts that are merely consistent with a defendant's liability." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted). Because *Turner* allows prohibitions and restrictions that are reasonably related to legitimate penological interests, Mr. Gee must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests. This is not to say that Mr. Gee must identify every potential legitimate interest and plead against it; we do not intend that pro se prisoners must plead, exhaustively, in the negative in order to state a claim. It is sufficient that he plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest.

In paragraphs 27, 33, and 53, Mr. Gee alleges that on August 2, 2002, November 15, 2002, and September 4, 2005, Defendant Lopez intentionally, and for the purpose of harassing him, confiscated and destroyed letters sent to him by

-18-

persons outside the prison "under the guise" of sticker and perfume violations.

R. Doc. 1 at 11, 12, 16.[3]  Although prison officials may regulate the content of

incoming mail and properly ban items such as stickers, *see Thornburgh*, 490 U.S.

at 416; *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990), there is no

legitimate penological reason to restrict mail simply to harass inmates or to

confiscate mail that complies with prison policy.  These allegations state plausible

claims of violations of Mr. Gee's First Amendment rights.

In paragraphs 28 and 29, Mr. Gee alleges that on August 11 and August 12,

2002, Defendant Lopez returned to him outgoing letters that had "appropriate

postage affixed . . . without reason for not sending [them] to the Post Office" for

mailing.  R. Doc. 1 at 11.  A prisoner has a constitutional right to have his

outgoing mail processed for delivery, absent legitimate penological interests to

the contrary.  *See Treff*, 74 F.3d at 195.  Because Mr. Gee alleges that he placed

adequate postage on his letters and that Defendant Lopez gave no reason for not

processing his mail, these paragraphs state plausible claims of violations of

Mr. Gee's First Amendment rights.

A closer question is raised by Mr. Gee's allegations regarding mail from

his sister.  Paragraph 13 alleges that on March 5, 2002, Defendant Pacheco had

him placed in an isolation cell on incommunicado status, during which he was not

---

[3]Our citations to Mr. Gee's complaint use the page numbers assigned by the court's electronic docketing system.

allowed to send out or receive personal mail, and that he was held in this incommunicado status until April 1, 2002. Paragraph 16 further alleges that during this period a letter from his estranged sister initially was mistakenly given to him and then confiscated by Defendant Halter or another official because of his incommunicado status, before he could read it. The letter was never returned to him. There are certainly legitimate penological reasons for isolating a prisoner for limited periods of time, but it is not apparent why a prisoner should be permanently deprived of a letter from an estranged family member solely because it arrived during such temporary isolation. The Supreme Court has recognized that "[a]ccess is essential . . . to families and friends of prisoners who seek to sustain relationships with them." *Thornburgh*, 490 U.S. at 407. Although Mr. Gee did not allege that prison officials provided no reason for the permanent confiscation of his sister's letter, we think that such confiscation is on its face sufficiently problematic that the claim deserves to proceed beyond the pleading stage. *See id.* at 414 (applying *Turner*'s reasonableness standard "with confidence" that such standard "is not toothless" (internal quotation marks omitted)).

### (2) Retaliation

Mr. Gee also alleges that Defendants took various actions against him in retaliation for exercising his First Amendment rights. It is well-settled that "[p]rison officials may not retaliate against or harass an inmate because of the

inmate's exercise of his right of access to the courts." *Smith*, 899 F.2d at 947. As discussed later in this opinion, we agree with the district court that most of the retaliation allegations fail to state a claim. But the allegations in paragraphs 34 through 42 (1) identify constitutionally protected activity in which Mr. Gee engaged (filing specific grievances against Defendants and filing a particular habeas petition with the court); (2) describe a responsive action that would "chill a person of ordinary firmness from continuing to engage in that activity" (transfer to an out-of-state supermax prison); and (3) recite facts indicating that the action "was substantially motivated as a response to [his] exercise of constitutionally protected conduct" (that Defendants were aware of his protected activity, that his protected activity complained of Defendants' actions, and that the transfer was in close temporal proximity to the protected activity). *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (listing elements of a First Amendment retaliation claim); *see Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006) (concluding that it was inappropriate to dismiss claim of retaliatory transfer); *Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990) ("[W]hile a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." (internal quotation marks omitted)). The allegations may be improbable, but they are not implausible.

-21-

Accordingly, they state a claim for relief, and they should have been allowed to proceed beyond the pleading stage.

### b. Eighth Amendment Claim

In paragraphs 69, 108, and 109, Mr. Gee alleges that as he was being transported between prisons, he informed Pacheco and Everett that he had not had food or water for more than 24 hours, but Everett said "'he didn't care,'" and both Defendants restrained him with a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water provided to the other prisoners being transported. R. Doc. 1 at 18–19, 26. Because these paragraphs allege sufficient facts to establish both elements of an Eighth Amendment claim—the objective prong of sufficiently serious deprivation and the subjective prong of deliberate indifference, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Howard*, 534 F.3d at 1236–37 (discussing the elements of an Eighth Amendment claim)—they state a plausible claim for relief. *See Schilling v. Transcor Am., LLC*, No. C 08-941 SI, 2010 WL 583972, at *1, *12 (N.D. Cal. Feb. 16, 2010) (granting motion for class certification in lawsuit challenging transport company's policy of shackling prisoners and depriving them of access to regular food, water, exercise, beds, and bathrooms during transport).

Defendants argue that this claim is time-barred because it occurred on January 25, 2002, four years and two days before the district court received Mr. Gee's complaint. The forum state's statute of limitations for personal-injury

actions sets the limitations period for § 1983 actions. *See Wilson v. Garcia*, 471 U.S. 261, 269, 276 (1985). The most analogous Wyoming limitations provision is Wyo. Stat. Ann. § 1-3-105(a)(iv)(C) (setting four-year limitations period for "[a]n injury to the rights of the plaintiff, not arising on contract and not herein enumerated"), making the applicable limitations period four years. *See Sullivan v. Bailiff*, 867 F. Supp. 992, 996 (D. Wyo. 1994). This claim accrued on the date of the incident, *see Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." (internal quotation marks omitted)), so the court received the complaint just after the limitations period expired.

In his response to Defendants' motion to dismiss, however, Mr. Gee contended that he was entitled to equitable tolling of the limitations period. *Cf. United States v. Gabaldon*, 522 F.3d 1121, 1126 (10th Cir. 2008) (officials' seizure of legal materials just before filing deadline would constitute "extraordinary circumstances" warranting 36-day equitable tolling in habeas case). State law governs tolling in § 1983 cases, *see Fogle*, 435 F.3d at 1258, and we have found nothing to indicate that Wyoming has rejected equitable tolling. Mr. Gee's brief argument for such tolling was vague regarding why he could not have brought this claim in a timely manner. Nevertheless, given that the delay was only two days past the statutory deadline, the claim should not have been

dismissed without giving Mr. Gee an opportunity to describe with greater specificity why equitable tolling should apply. It will be for the district court in the first instance to determine whether Wyoming would allow equitable tolling and, if so, whether Mr. Gee's allegations justify equitable tolling.

### 2. Allegations that Fail to State a Claim

In contrast to the paragraphs discussed above, the other allegations in Mr. Gee's complaint are insufficient to state a claim.

### a. First Amendment Claims

Some of Mr. Gee's First Amendment allegations concern treatment imposed when he was not in Defendants' physical custody, but in out-of-state prisons. Mr. Gee has not alleged sufficient facts to show that Defendants should be liable for his treatment at the hands of non-Defendants. *See, e.g., Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

Mr. Gee's bare allegations (1) of brief delays in mailing or receiving his correspondence and (2) of denial of his right to communicate with persons outside the prison when he was placed in isolation for approximately 25 hours on February 28, 2002, do not rise to the level of constitutional violations. As for his complaints that one letter was censored and that Defendants withheld and forced him to dispose of magazines to which he subscribed, such restrictions are sufficiently commonplace in the prison setting, *see, e.g., Thornburgh*, 490 U.S. at

415-19 (upholding restrictions on prisoners' incoming mail); *Smith*, 899 F.2d at 944 (complaint about undelivered catalogues did not raise a constitutional issue), that his claim is not plausible absent allegations showing that the restrictions were imposed in violation of prison regulations or that the regulations invoked were unconstitutional in the circumstances. And Mr. Gee's allegation that Defendants transferred him to Nevada to prevent him from communicating with outside persons (because Nevada does not provide stamps to indigents) is too conclusory and speculative to satisfy *Iqbal* standards.

Mr. Gee also fails to state a proper claim of violations of his constitutional right to access the courts. He alleges that Defendants engaged in confiscating, reviewing, and hindering access to his legal files, hindering his communications with a jailhouse lawyer, denying him access to a law library, and interfering with his legal mail. But as the district court correctly held, a prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement. *See Lewis v. Casey*, 518 U.S. 343, 351–55 (1996). Mr. Gee's access-to-the-courts allegations fail this test.

Many of Mr. Gee's allegations do not connect a deprivation to any injury at all. Some allegations—such as his assertion that he "was unable to research and prepare initial pleading to claims of illegal disciplinary guilty findings, theft of

-25-

personal and legal property, cruel and unusual punishment, [and] unable to follow up on *Parkhurst v. Uphoff*, No 95-8003," R. Doc. 1 at 6—are too conclusory to present a plausible claim that he was impeded in his effort to pursue a nonfrivolous legal claim. And where he does provide detail regarding an alleged injury, it is implausible that he was deprived of the opportunity to present a nonfrivolous legal claim. For example, he states that Defendants' interference caused the dismissal of a New York habeas petition and two Wyoming habeas petitions. But the only events of interference described in the complaint occurred well after the dismissal of both the New York petition and the first Wyoming petition.[4] (We take judicial notice of court records in the underlying proceedings. *See Tellabs, Inc.*, 551 U.S. at 322; *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")) And he cannot establish any injury caused by Defendants with respect to his second Wyoming petition, because he admits that it did not present a proper habeas claim.

---

[4]Mr. Gee's appellate filings further discuss these dismissals and allege that Defendants precluded him from pursuing his appeal in this court to challenge the dismissal of the first Wyoming petition, but none of this information is included in his complaint.

Finally, with the exception of the allegations in paragraphs 34 through 42 discussed above, Mr. Gee's allegations of retaliation for exercising his First Amendment rights are vague and conclusory. "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n.1.

### b.  Eighth Amendment Claims

We next turn to Mr. Gee's Eighth Amendment claims. As with several of his First Amendment allegations, some of the complaint's paragraphs concern his conditions of confinement when he was not in Defendants' physical custody, and he has not shown how Defendants were responsible for those conditions. *See, e.g.*, *Foote*, 118 F.3d at 1423. Those allegations fail to state a proper claim.

Other paragraphs describe Defendants' confiscating Mr. Gee's canteen items, depriving him of hygiene items for approximately 25 hours, and incarcerating him for four weeks in an isolation cell with limited outdoor recreation and lack of access to hygiene items. Again, however, deprivations of possessions and privileges are consistent with reasonable penological practices. The complaint's allegations contain insufficient factual information to conclude that a constitutional violation is plausible, rather than merely possible. *See, e.g., Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Harris v. Fleming*,

839 F.2d 1232, 1236 (7th Cir. 1988) (no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).

As for Mr. Gee's allegations concerning Dr. Coyle, the district court correctly observed that some allegations indicate not a lack of medical treatment, but a disagreement with Dr. Coyle's medical judgment in treating a condition with certain medications rather than others. For example, Mr. Gee alleges that he was not given the medications he desired for his headaches; but he admits being given other medications, so his complaint amounts to merely a disagreement with Dr. Coyle's medical judgment concerning the most appropriate treatment. An Eighth Amendment violation requires both a sufficiently serious medical need and deliberate indifference by the health-care provider. *See Estelle*, 429 U.S. at 106. Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation. *See id.*; *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993).

Mr. Gee also complains that Dr. Coyle refused to recognize or treat a sleepwalking disorder, posttraumatic stress disorder, anxiety, and certain lumps that he is convinced must be tumors. Nothing in the complaint, however, alleges the existence of a sufficiently serious medical need, which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation

-28-

marks omitted).  The complaint identifies no medical support for the existence of the disorders and describes no symptoms that would alert a lay person to the need for treatment.  Rather, the complaint alleges only a failure to treat self-diagnosed ailments, which is insufficient to establish an Eighth Amendment violation.[5]  *See Aswegan v. Henry*, 49 F.3d 461, 464–65 (8th Cir. 1995); *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (prisoner stated a claim because he alleged that doctors had diagnosed him with hepatitis C, yet officials removed him from treatment program).  The remaining allegations against Dr. Coyle, which also include allegations against other Defendants, fail because they are vague and conclusory.

Finally, Mr. Gee's allegation that he was assaulted while being transported within WSP is not sufficiently specific to identify an Eighth Amendment violation.  He uses the bare term *assaulted* without explaining what Defendants allegedly did.  But not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . .  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks omitted).  Mr. Gee may have used the term *assault* to mean a

_____

[5]Of course, even if information concerning a medical diagnosis were included in the complaint, Mr. Gee may still fail to establish the existence of a *serious* medical need that can support an Eighth Amendment claim.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (prisoners' allegations of mental disorder did not establish serious medical need).

mere unwelcome touching.  And the "assault" could have been justified by simply a need for him to move faster.  In the prison context, more than the word *assault* is necessary to allege a plausible violation of the Eighth Amendment.

### c.     Fourteenth Amendment Claims

As with the majority of the complaint's allegations of violations of the First and Eighth Amendments, Mr. Gee's Fourteenth Amendment paragraphs also fail to state any claims.

His allegations in paragraphs 103 through 107 all concern events in May 2001, so the statute of limitations for these claims expired months before he filed his complaint in January 2006.  On appeal he argues that his claims should not be time-barred, asserting that he was denied access to a law library and his essential legal property for almost four years.  But he does not specify any excuse for delay after his return to custody in Wyoming in February 2005.  Even assuming that Wyoming would recognize equitable tolling, it almost certainly would incorporate a diligence requirement.  *See Swinney v. Jones*, 199 P.3d 512, 515 (Wyo. 2008) ("The very purpose of a statute of limitations is to require diligence and prevent parties from sleeping on their rights." (internal quotation marks omitted)); *Holland v. Florida*, 130 S. Ct. 2549, 2565 (2010) (a habeas petitioner is entitled to equitable tolling only if he pursues his rights with reasonable diligence).  And Mr. Gee's taking 11 months after his return to Wyoming to prepare his fact-based complaint was not adequate diligence.  *See Braxton v. Zavaras*, 614 F.3d 1156,

1162 (10th Cir. 2010) (equitable tolling not warranted when prisoners failed to file suit within the ample time left after exhausting their administrative remedies); *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted."). Because he has failed to establish that he acted with diligence, we affirm the dismissal with prejudice of all claims regarding events in 2001.[6]

With regard to Mr. Gee's allegations of being deprived of liberty without due process, he fails to establish the existence of a protected liberty interest. As a matter of law, he has no liberty interest in being incarcerated in a particular institution, *see Meachum v. Fano*, 427 U.S. 215, 223–25 (1976), or in discretionary classification decisions by prison officials, *see Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Nor does he have a liberty interest in his conditions of confinement (including placement in isolation and segregation), unless the facts show that the conditions "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (applying *Sandin* to regulations concerning prison

---

[6]In addition to paragraphs 103 through 107, this analysis applies also to the First Amendment claims in paragraphs 3 through 6 and the Eighth Amendment claims in paragraphs 65 through 68.

conditions).[7]  In most instances, Mr. Gee pleaded no facts to support a claim of

atypical and significant deprivation, and in the few instances when he did plead

any facts, he did not plead enough facts to make it plausible that he suffered an

atypical and significant hardship.  Finally, with regard to his allegations of false

information in his base file, it is not enough to allege that a government agency or

official has published false or defamatory information.  *See Paul v. Davis*,

424 U.S. 693, 712 (1976).  Rather, to establish a constitutional violation, a

plaintiff must show that an additional action taken on the basis of the information

deprived him of a liberty or property interest.  *See id.*  Mr. Gee does not plead

facts that meet this standard.

Similarly, Mr. Gee fails to plead sufficient facts to state a claim of

deprivation of property without due process, because he does not allege the lack

of an adequate state remedy for that deprivation.  "[A]n unauthorized intentional

deprivation of property by a state employee does not constitute a violation of the

procedural requirements of the Due Process Clause of the Fourteenth Amendment

if a meaningful postdeprivation remedy for the loss is available," and "the state's

action is not complete until and unless it provides or refuses to provide a suitable

postdeprivation remedy," *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Thus,

"[i]n order to state a claim under § 1983, a complaint must allege facts sufficient

---

[7]None of the conditions alleged by Mr. Gee rise to the level of conditions "exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."  *Sandin*, 515 U.S. at 484.

to show deprivation, in this case the lack of an adequate state remedy." *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989) (per curiam); *cf. Freeman v. Dep't of Corr.*, 949 F.2d 360, 362 (10th Cir. 1991) ("[U]nlike in *Durre*, the appellant here has alleged specific facts showing that the state procedure has been unresponsive and inadequate. If in fact the state remedy was constitutionally insufficient, the appellant may have a cause of action under section 1983 for the confiscation of his property.").

Mr. Gee's claims regarding certain disciplinary proceedings in March and April 2002 fail because, as the district court determined, they were adjudicated in another lawsuit, and are therefore barred by claim preclusion. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (setting forth elements of claim preclusion). The district court properly referred to its records to dismiss these allegations. *See Tellabs*, *Inc.*, 551 U.S. at 322; *St. Louis Baptist Temple*, 605 F.2d at 1172 ("[A] court may . . . take judicial notice, whether requested or not . . . of its own records and files, and facts which are part of its public records."). Two additional paragraphs concern challenges to other disciplinary proceedings, but the allegations are too conclusory to support a claim that the proceedings violated due-process protections.

In paragraphs 141 and 142, Mr. Gee complains that prison officials searched his "cell without allowing him to observe the cell search, where all other prisoners housed on plaintiff's housing unit were allowed to observe[] their cell

searches." R. Doc. 1 at 32. Mr. Gee does not have a Fourteenth Amendment right to observe his cell search. *See Block v. Rutherford*, 468 U.S. 576, 589–91 (1984). And although he does have a right to be treated the same as people similarly situated to him, *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (equal protection "is essentially a direction that all persons similarly situated should be treated alike"), he did not allege any injury from being unable to watch the cell search.

Finally, Mr. Gee's remaining allegations of racism, discrimination, equal-protection violations, and retaliation are entirely conclusory. In paragraph 121, for example, he complains that officials have enacted a property policy that discriminates against indigent prisoners. But he fails to identify the policy or describe it well enough to convey the basis for his claim. Other paragraphs complain of actions taken as the result of discrimination, but he fails to explain the ground for the alleged discrimination.

### 3. Dismissal With Prejudice Without Opportunity to Amend

The district court dismissed the entire complaint with prejudice. But "dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Oxendine*, 241 F.3d at 1275 (brackets and internal quotation marks omitted). "[T]he plaintiff whose factual allegations are close to stating a claim but are missing some important element

that may not have occurred to him, should be allowed to amend his complaint." *Hall*, 935 F.2d at 1110. There is no indication that the district court considered allowing Mr. Gee to amend his complaint with regard to any of his allegations.

True, only a few of the complaint's 154 paragraphs state plausible claims for relief under *Twombly* and *Iqbal*. The district court, however, should have afforded Mr. Gee the opportunity to amend his complaint before dismissing every claim with prejudice. On remand, the district court shall allow Mr. Gee an opportunity to seek leave to file an amended complaint that satisfies *Twombly* and *Iqbal*, except for those claims that are barred by preclusion or the statute of limitations so that amending those claims would be futile. *See Iqbal*, 129 S. Ct. at 1954 (remanding for the court of appeals to determine whether to remand to the district court so the plaintiff could seek leave to amend his complaint).

## III. CONCLUSION

The dismissal with prejudice of paragraphs 115–18 and 120, which are subject to claim preclusion, and paragraphs 3–6, 65–68, and 103–107, which are time-barred, is AFFIRMED. Thus, the dismissal of Defendants Lenny Stilwell and S. Kelley, who are named only in the precluded claims, is AFFIRMED. The remainder of the district court's judgment is REVERSED and the case is REMANDED for further proceedings, with instructions for the district court to allow Mr. Gee to seek leave to file an amended complaint, if he wishes, to be evaluated according to the standards set forth in this opinion. The district court

-35-

may place appropriate restrictions on any amended complaint, such as directing Mr. Gee only to elaborate on the events that were identified in his original complaint, and not to attempt to add any additional or different claims. All pending motions before this court are DENIED.