**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIA ISELA DEHERRERA,

     Plaintiff - Appellant,

v.

OFFICER JIM EDDY, in his individual
capacity; SERGEANT MATTHEW
SOLBERG, in his individual capacity,

     Defendants - Appellees,

and

BRIAN KOZAK, individually and in his
official capacity as Chief of Police;
OFFICER JIM EDDY, in his official
capacity; SERGEANT MATTHEW
SOLBERG, in his official capacity;
STEVE PALSO, an individual; LIPSEY
COMMUNICATIONS, LLC, an
authorized Sprint Retailer, DBA
Connectivity Source; CCT WIRELESS,
INC., an authorized Sprint Retailer;
SPRINT COMMUNICATIONS
COMPANY, LP,

     Defendants.

No. 19-8066
(D.C. No. 2:19-CV-00111-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral

_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
_____

Plaintiff Maria Isela DeHerrera appeals the district-court order dismissing under Fed. R. Civ. P. 12(b)(6) her 42 U.S.C. § 1983 claims against Officer Jim Eddy and Sergeant Matthew Solberg in their individual capacities for violation of her rights under the Fourth Amendment.[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  Background

Because the district court resolved the case under Rule 12(b)(6), we take the facts from Plaintiff's complaint, accepting as true all well-pleaded nonconclusory factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  We also consider two additional documents—a police report and a witness statement.  They were relied on by the district court because their authenticity is not challenged and they are referred to in the complaint and central to the claim.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (noting propriety of the use of such documents

---

estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Plaintiff originally brought additional claims against Officer Eddy and Sergeant Solberg in their individual and official capacities and various claims against the other above-named defendants.  On this appeal she does not challenge the disposition of those claims, so we do not address them.  *See Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

in resolving motion under Rule 12(b)(6)). Moreover, on appeal neither party challenges the district court's reliance on them.

Thus, we assume the truth of the following relevant facts: Using an online platform and identifying herself as "Isela Maria," Plaintiff sold what she described as a working Sprint iPhone for $400. The woman who purchased the phone (the purchaser) took it to a Sprint store to have it activated. Before activating a phone for a new owner, a Sprint employee manually enters the phone's International Mobile Equipment Identity (IMEI) number into a Sprint computer program—"a diagnostic tool, called the Sprint Network Analysis, foreign device management program" that "enable[s] employees . . . to determine . . . whether a particular phone is eligible for activation." Aplt. App. at 22, ¶ 70 (internal quotation marks omitted). A store employee entered what he thought was the phone's IMEI number into the diagnostic program, and the program flagged the phone as a "locked insurance claim phone." *Id.* at 10, ¶ 6 (internal quotation marks omitted). The program's response led the employee to believe Plaintiff "had committed a fraud." *Id.* at 23, ¶ 77. The purchaser contacted Plaintiff, who denied wrongdoing. The purchaser then called the Cheyenne, Wyoming police department.

Officer Eddy responded to a call from the store, where the purchaser and employee reported their understanding that the phone was a "locked insurance claim phone" ineligible for activation. *Id.* at 10, ¶ 6 (internal quotation marks omitted). Officer Eddy took no immediate action.

3

Later that day, Plaintiff called the store. She initially told the employee she had a Sprint account but when asked for her account number, she admitted she had never been a Sprint customer. The employee later sent Officer Eddy a written statement reporting Plaintiff's inconsistent statements about whether she was a Sprint customer and providing a screenshot of the diagnostic program result. The screenshot showed an IMEI number that had 13, not 15, digits. Officer Eddy logged the phone into evidence, noting the 15-digit IMEI number.

Officer Eddy attempted to contact Plaintiff using the phone number the purchaser had provided for her, but she did not answer. Because she did not use her full name when she listed the phone for sale, Officer Eddy did not yet know her identity. At his request another officer posted information about her on the department's Facebook page, identifying her as a suspect and asking for help locating her. Soon thereafter, she called the department, identified herself, and told the officer with whom she spoke (Officer Womack) that she had had an account with Sprint, had made an insurance claim for a damaged phone, cancelled her account with Sprint, and sometime later sold the replacement phone. The department then took down the Facebook post.

Plaintiff later went to the police station, but she did not have an appointment and Officer Eddy was unavailable. When Sergeant Solberg called her that evening to address her concerns about the Facebook posting, she told him she was innocent and that she had a receipt from when she purchased the phone. He told her to return the purchaser's money and, according to Plaintiff, said he did not care about the receipt.

4

Officer Eddy recommended to prosecutors that Plaintiff be charged with the misdemeanor offense of obtaining property by false pretenses. She was then arrested, charged, and held in jail for two days.

At the suggestion of her criminal-defense attorney, Plaintiff took the box the phone came in, which listed the phone's IMEI number, to a Sprint store. The store manager ran the number through the diagnostic program, which reported that the phone could be activated. Plaintiff showed the manager the screenshots of the previous diagnostic reports flagging the phone as a fraud, and he determined that the system had produced inconsistent results because the store employee had omitted the last two digits of the 15-digit IMEI number when he typed it into the program. Based on that discovery, the charge was dismissed.

Plaintiff then filed this suit claiming, as pertinent here, that she was arrested because of an inadequate investigation by Officer Eddy and Sergeant Solberg, in violation of her Fourth Amendment rights. They moved to dismiss the claims against them in their individual capacities on the ground of qualified immunity. The district court granted the motion.

## II. Discussion

We review de novo the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. *See Gee*, 627 F.3d at 1183. We view all well-pleaded factual allegations in the light most favorable to the plaintiff. *See Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018).

5

Because Officer Eddy and Sergeant Solberg invoke the defense of qualified immunity, Plaintiff must allege facts showing (1) that the defendants violated a constitutional right and (2) that the right at issue was "clearly established at the time" of her arrest. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). The alleged constitutional violation in this case is the officers' failure to conduct a reasonable investigation before determining that there was probable cause to arrest Plaintiff. "A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued." *Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) (internal quotation marks omitted). But we keep in mind that the "touchstone of the Fourth Amendment is reasonableness" and since "[t]o be reasonable is not to be perfect," "the Fourth Amendment allows for some mistakes on the part of" law enforcement officers. *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (internal quotation marks omitted). And the reasonableness of a police officer's action "must be judged from the perspective of a reasonable officer" at the time, not "with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, an arrest is not rendered constitutionally unreasonable simply because the arrestee turned out not to be guilty. *See id.* (explaining that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested").

The clearly-established standard "requires a high degree of specificity"; the legal principle must "clearly prohibit the officer's conduct in the particular

6

circumstances before him." *Wesby*, 138 S. Ct. at 590 (internal quotation marks omitted). "[T]he specificity of the rule is especially important in the Fourth Amendment context" because, "[g]iven its imprecise nature, officers will often find it difficult to know how the general standard . . . applies in the precise situation encountered." *Id.* (internal quotation marks omitted). Thus, the plaintiff must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Id.* (ellipsis and internal quotation marks omitted). The case "must place the lawfulness of the particular arrest beyond debate." *Id.* (internal quotation marks omitted).

We agree with the district court's conclusion that Officer Eddy acted reasonably. Nothing in the complaint or incorporated documents suggests any reason to question the Sprint employee's competence or trustworthiness. Thus, Officer Eddy reasonably relied on the employee's report that he entered the phone's IMEI number into the company's computer program and that the program indicated that the phone could not be activated and was likely fraudulent. It was also reasonable for Officer Eddy to be suspicious of Plaintiff's actions given that she made contradictory statements to the employee about whether she had a Sprint account, told Officer Womack that she had an account, and did not use her full name in her online posting listing the phone for sale. Moreover, Plaintiff's statement to Officer Womack that she had made an insurance claim on a Sprint phone supported the store employee's conclusion that the phone was a "locked insurance claim phone." Aplt. App. at 91 (internal quotation marks omitted).

7

Like the district court, we reject Plaintiff's argument that Officer Eddy "fail[ed] to conduct an objectively reasonable investigation" because he did not "contact [her to] get her side of the story," Aplt. Br. at 17, and "failed to compare the IMEI number of the phone sold by [her] to the information provided by the Sprint [s]tore," *id.* at 16. Contrary to her assertion that Officer Eddy did not attempt to contact her, the complaint and incorporated documents establish that he tried to call her "a couple of times," Aplt. App. at 91, and he had "her side of the story," Aplt. Br. at 17, based on her statements to Sergeant Solberg and Officer Womack.

With respect to Officer Eddy's failure to compare the IMEI numbers, we agree with the district court's determination that his "mistake or oversight" in not noticing the discrepancy was "not a purposeful attempt to turn a blind eye to readily-available exculpatory evidence," Aplt. App. at 117, and fell "well short of an unconstitutional abandonment of his law enforcement duties," *id.* at 118. With the benefit of hindsight, it plainly would have been helpful for an officer to have compared the numbers. But we do not think it was constitutionally unreasonable for the officers to fail to double-check the work of someone with special expertise or resources who would have no apparent motive to make a false accusation, and Plaintiff has pointed to no precedent, much less clearly established law, requiring an officer to do so.

Nor are we persuaded by Plaintiff's argument that both defendants violated her Fourth Amendment rights by "ignor[ing]" her statement to Sergeant Solberg that she had a receipt for the phone, which she characterizes as "exculpatory evidence." Aplt. Br. at 17; *see also id.* at 20-21. A receipt for the original purchase of the phone

8

would not have been exculpatory—Plaintiff was not suspected of stealing the phone; she was suspected of knowing it was inoperable when she sold it as a functional phone. In any event, the cases she relies on as "clearly established law" do not support her argument that defendants abandoned their investigative responsibilities by not following up on the receipt. Unlike the officer in *Baptiste v. J.C. Penney Co.*, Officer Eddy and Sergeant Solberg did not review and then ignore clearly exculpatory evidence. *See* 147 F.3d 1252, 1259-60 (10th Cir. 1998) (concluding officer who viewed and ignored exculpatory video evidence was not entitled to qualified immunity). And unlike the officer in *Maresca v. Bernalillo County*, 804 F.3d 1301 (10th Cir. 2015), Officer Eddy and Sergeant Solberg did not generate the incorrect information they relied on or ignore immediately available exculpatory information. *See id.* at 1311 (officer not entitled to qualified immunity for wrongful arrest where she triggered the stolen-vehicle report that was the sole basis for the arrest by mistyping the license-plate number into her computer, then ignored information "already on the computer screen in front of her and from the dispatcher" that revealed the disparity between the vehicle she stopped and the one on the stolen-vehicle report).

Under the totality of the circumstances, and judging defendants' actions from their perspective at the time of the investigation, *see Graham*, 490 U.S. at 396, we conclude that they did not violate the Fourth Amendment, certainly not clearly established Fourth Amendment law. We therefore agree with the district court's conclusion that both defendants are entitled to qualified immunity.

9

### III.  Conclusion

The order dismissing Plaintiff's individual-capacity claims against Officer

Eddy and Sergeant Solberg is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge