**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**October 5, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

PETER GEORGE NOE,

    Plaintiff - Appellant,

v.

WILLIAM TRUE,* in his official capacity;
DALE BILBREY, in his official capacity,

    Defendants - Appellees.

No. 21-1373
(D.C. No. 1:19-CV-02148-DDD-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT***

_____

Before **TYMKOVICH**, **MATHESON,** and **EID**, Circuit Judges.

_____

Peter George Noe appeals the district court's dismissal of his pro se fourth

amended complaint against federal prison officials in which he sought injunctive and

declaratory relief on claims asserting First Amendment free-speech and Fifth

_____

    * In accordance with Rule 43(c)(2) of the Federal Rules of Appellate
Procedure, William True is substituted for Andre Matevousian as the defendant in
this action.

    ** After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Amendment due-process violations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    Background

Noe is a prisoner housed at the USP Florence ADX detention facility operated by the federal Bureau of Prisons (BOP). He filed a pro se complaint alleging, inter alia, constitutional violations with respect to prison mail policies and a denial of programming and incentives under the First Step Act, 18 U.S.C. § 3632. Noe amended his complaint several times.

In his fourth amended complaint (FAC), Noe named as defendants the warden at ADX and another prison employee, both in their official capacities. In Claim One, he alleged that the prison had rejected two incoming letters addressed to him under a "name-alone content" mail policy. Noe asserted that defendant Dale Bilbrey told him this policy prohibits inmates from sending or receiving mail that mentions the name of another inmate or a previous inmate. Noe claimed that this policy violates his First Amendment right to free speech.

In Claim Two, Noe challenged a different mail policy directed at keeping illegal drugs out of the prison. This policy requires, among other things, that all incoming mail be in white envelopes and on white paper. Noe claimed that this drug-interdiction policy violates his First Amendment right to free speech because, rather than rejecting and returning mail that violates the policy, the prison could instead provide him photocopies of the rejected correspondence. Noe further alleged

that the prison was not providing him notice when mail is rejected under this policy, which he claimed violates his Fifth Amendment right to due process.

In Claim Three, Noe alleged that the First Step Act (FSA) entitles him to incentives for participating in recidivism reduction programming, including additional telephone and email usage, time credits, and placement at a prison facility closer to his home. He claimed that the warden advised him that FSA incentives do not apply to him because he is housed at ADX and because he is a validated member of the Aryan Brotherhood. Noe asserted that his exclusion from FSA incentives on these bases violates his Fifth Amendment right to equal protection. Noe further alleged he was being denied the ability to earn time credits under the FSA, in violation of his Fifth Amendment right to due process, because of the limited availability of FSA programming at ADX.

Defendants moved to dismiss Noe's FAC, contending that some of his claims should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), while other claims should be dismissed for failure to state a claim under Rule 12(b)(6). A magistrate judge (MJ) recommended that the district court grant defendants' motion, concluding as follows as to each claim:

- Noe's due-process claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because (a) his due-process claim in Claim Two was moot and he lacked standing, and (b) his due-process claim in Claim Three was not ripe.

- Noe's free speech claims in Claim One and Claim Two should be dismissed under Rule 12(b)(6) for failure to state a claim because he did not plausibly allege First Amendment violations.

- Noe's equal-protection claim in Claim Three should be dismissed under Rule 12(b)(6) for failure to state a claim because he did not plausibly allege an equal-protection violation.

Noting that Noe had amended his complaint four times, the MJ also recommended that his FAC be dismissed without leave to amend. After reviewing de novo Noe's objections to the MJ's recommendation, the district court adopted it and entered a final judgment dismissing his FAC with prejudice.

## II.    Discussion

Noe appeals the dismissal of all of his claims. We construe his pro se filings liberally, but we do not act as his advocate. *See James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

### A.    Dismissal for Lack of Subject Matter Jurisdiction

The district court dismissed Noe's due-process claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Under that rule the movant may either facially attack the allegations in the complaint or go beyond the allegations and instead challenge the facts on which the claim of jurisdiction is based. *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). Here, defendants chose the second option. Consequently, the district court had "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve

4

disputed jurisdictional facts" without converting the motion into a summary judgment motion. *Id.* (internal quotation marks omitted). We review de novo the district court's dismissal of claims under Rule 12(b)(1) for lack of subject matter jurisdiction, and we review its findings of jurisdictional fact for clear error. *Id.*

### 1.    Claim Two – Due Process – Lack of Standing

Noe alleged in Claim Two that the prison was not providing him notice when it rejected incoming mail under the drug-interdiction policy. He claimed this lack of notice violated his Fifth Amendment right to due process. Defendants argued Noe's claim was moot to the extent he challenged a lack of notice regarding past rejections of his mail, based upon their evidence that, per a rejection-notice policy, Noe had received notice of all mail already rejected.[1] Defendants also argued that Noe lacked standing to obtain injunctive and declaratory relief regarding alleged future violations of the rejection-notice policy because he failed to show that he faced more than a possibility of future injury. Noting defendants' assertion that they will continue to comply with the established rejection-notice policy, the district court concluded that Noe's allegations regarding future conduct amounted to only a concern that defendants will not do so. The court therefore dismissed Noe's due-process claim in Claim Two for lack of subject matter jurisdiction under Rule 12(b)(1).

---

[1] On appeal, Noe asserts his FAC did not challenge the prison's failure to provide notice of rejections of his mail in the past, so we need not address whether such a claim is moot.

Noe challenges the district court's determination he lacked standing to bring his due-process claim involving notice of rejected mail. "[A] plaintiff must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (brackets and internal quotation marks omitted). "To satisfy the first of these three elements, a plaintiff must offer something more than the hypothetical possibility of injury. The alleged injury must be concrete, particularized, and actual or imminent." *Id.* at 544. It must be "*certainly* impending." *Id.* at 545 (internal quotation marks omitted).

Noe maintains that he challenged an ongoing "policy" under which mail that is rejected is stamped "unauthorized" and returned without issuing the required rejection forms. But he did not allege such a "policy" in his FAC. Rather, he alleged that the prison mailroom is so overwhelmed that it is violating its established rejection-notice policy. *See* R., Vol. 2 at 168.

Noe argues that defendants' evidence that the prison is following the rejection-notice policy and will continue to do so was not properly before the district court on a Rule 12(b)(6) motion. But defendants moved under Rule 12(b)(1), which, as explained, allowed them to challenge with evidence the facts on which Noe's claim of jurisdiction was based. It was then necessary for Noe to present affidavits or other evidence to satisfy his burden to establish that the district court, in fact, had

subject matter jurisdiction over his due-process claim. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).[2]

Noe does not point to any evidence supporting his claim of standing that he submitted in response to defendants' motion to dismiss.[3] Nor does he show clear error in the district court's findings of jurisdictional facts, specifically that the prison provided him notice in the past, it has an established policy for doing so, and it intends to comply with that policy in the future.[4] In light of these findings, the district court did not err in dismissing Noe's due-process claim in Claim Two for lack of standing under Rule 12(b)(1).

---

[2] There is "an exception to the general rule permitting the weighing of evidence in Rule 12(b)(1) proceedings . . . . if resolution of the jurisdictional question is intertwined with the merits of the case." *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1064 (10th Cir. 2012) (internal quotation marks omitted). But Noe did not raise that issue in the district court, nor does he argue on appeal that that exception applies. Any such argument is therefore forfeited.

[3] Noe attaches as an exhibit to his opening appeal brief a prison complaint form, dated *after* the district court entered judgment in this case, in which he stated he was not receiving notice of rejected mail. A prison employee noted in response, "Unopened mail that's returned does not generate a notice." Aplt. Opening Br., Ex. A. Noe asserts this document shows that the prison is not issuing rejection forms and that defendants' evidence otherwise is "not true." *Id.* at 22. But because this document was not in the record before the district court, we cannot consider it on appeal. *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000).

[4] Noe points to his verified FAC, in which he alleged that (a) the mailroom is so overwhelmed that they are stamping mail as unauthorized and returning it without issuing rejection forms, and (b) "all [his] mail from [his] family and friends is still to date being rejected and they won't give [him] the required rejection forms." R., Vol. 2 at 168. But these assertions do not show clear error in the district court's contrary findings based upon defendants' evidence.

7

### 2.     Claim Three – Due Process – Ripeness

Noe alleged in Claim Three that the prison is required to set up programming under the FSA pursuant to which he can earn time credits toward home confinement that would ultimately reduce the length of his sentence.  Noe claimed he has been on the waiting list for such programming since before the FSA was passed, but the warden has said that only three inmates at a time at ADX will be allowed to participate in these programs.  Noe alleged that the resulting delay in his participation is extending his sentence by ten to fifteen days per month, violating his right to due process.

The district court held this claim, which Noe asserted in his FAC in January 2021, was not yet ripe because (a) the BOP was not required to provide FSA programming until January 2022, and (b) during the phase-in period, priority for access to programming is assigned based on the proximity of the prisoner's release date.  The court found that this timeline was consistent with Noe's allegation of being on a waitlist for programming as of January 2021.  It concluded that until the BOP was required to provide Noe FSA programming, his claim of a current deprivation was not ripe for adjudication.

"In order for a claim to be justiciable under Article III, it must be shown to be a ripe controversy."  *See New Mexicans for Bill Richardson*, 64 F.3d at 1499.  "Ripeness is peculiarly a question of timing, intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Id.* (citation, brackets, and internal quotation marks omitted).

8

Noe argues his due-process claim is ripe because the warden told him he will never receive any FSA incentives. But he did not make this argument in his objections to the MJ's recommendation to dismiss his due-process claim. He argued only that he is eligible for FSA incentives despite the nature of his conviction. *See* R., Vol. 2 at 610-11. Noe therefore waived appellate review of the argument he now raises on appeal. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).[5] Consequently, Noe fails to show error in the district court's dismissal of his due-process claim in Claim Three under Rule 12(b)(1) for lack of subject matter jurisdiction.

We note, however, that the district court erred in dismissing Noe's due-process claims *with prejudice* for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.")

---

[5] The MJ's recommendation alerted Noe, who was proceeding pro se, to the timeline for filing objections and the specificity requirement. It also warned him that his failure to object would result in a waiver of his right to appellate review. *See* Suppl. R., Vol. 1 at 134 n.10. We conclude that the interests of justice do not support an exception to our firm waiver rule in this case. *See Casanova*, 595 F.3d at 1123 (discussing the factors relevant to determining whether to apply the interests-of-justice exception).

### B.        Dismissal for Failure to State a Claim

The district court granted defendants' motion to dismiss Noe's free-speech and equal-protection claims for failure to state a claim under Rule 12(b)(6).  We review these rulings de novo.  *See Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1184 (internal quotation marks omitted).  When making a plausibility determination, context is important—and "[n]owhere in the law does context have greater relevance to the validity of a claim than prisoner civil-rights claims."  *Id.* at 1185.  This is so because "[p]risons are a unique environment, and the Supreme Court has repeatedly recognized that the role of the Constitution within their walls is quite limited.  Government conduct that would be unacceptable, even outrageous, in another setting may be acceptable, even necessary, in a prison."  *Id.*  Thus, "a prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts," and more specifically, "a prisoner claim may not be plausible unless it alleges facts that explain why the usual justifications for the complained-of acts do not apply."  *Id.*

Our liberal construction of Noe's complaint does not relieve him "of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In particular, "conclusory

10

allegations without supporting factual averments are insufficient to state a claim." *Id.* Thus, we will accept as true only Noe's "well-pleaded factual contentions." *Id.*

### 1. Claim One – Free Speech

Noe alleged in Claim One that the prison rejected two letters addressed to him from senders who are not inmates or former inmates under a name-alone content policy that prohibits inmates from sending or receiving mail that mentions the name of another inmate or a previous inmate. He argued this mail policy violates his right to freedom of speech under the First Amendment. Defendants asserted in their motion to dismiss that the letters to Noe were instead rejected pursuant to the prison's longstanding policy precluding correspondence between inmates. Defendants deemed Noe's allegations about a name-alone content mail policy a "straw-man argument [regarding] the real reason for the rejections." R., Vol. 2 at 183. The district court accepted defendants' assertions, held that Noe failed to plausibly allege that the prison's inmate-to-inmate mail policy does not serve a legitimate penological purpose, and dismissed Claim One under Rule 12(b)(6) for failure to state a claim.

### a. Reliance on Facts Outside of the FAC

Noe contends that the district court failed to accept the truth of the allegations in his FAC, in which he challenged a name-alone content mail policy, not the inmate-to-inmate mail policy. "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee*, 627 F.3d at 1186. "If a district court intends to rely on

other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties." *Id.*

Although Noe alleged he was eventually told "that the reason those letters were rejected was due to 'Inmate to Inmate correspondence,'" he disputed that explanation, alleging that defendant "Bilbr[e]y . . . is the one that rejected the letters and he specifically said the rejections were <u>not</u> due to Inmate to Inmate correspondence but under a different policy known as 'name alone content' that requires any mail that has another inmate's name in it to be rejected." R., Vol. 2 at 163-64. We agree with Noe that the district court improperly adopted defendants' version of the facts rather than accepting as true this well-pleaded factual contention regarding the prison's basis for rejecting the letters. *See Gee*, 627 F.3d at 1187 (holding district court improperly relied on documents outside of the complaint to refute the plaintiff's factual assertions).

But we can nonetheless affirm the district court's ruling on Claim One if dismissal can be justified considering only the allegations in Noe's FAC. *See id.* We therefore consider whether Noe pleaded sufficient facts in his FAC to state a claim that the alleged name-alone content mail policy is invalid under the First Amendment.

### b.    Failure to Plead a Plausible Claim for Relief

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

*Turner v. Safley*, 482 U.S. 78, 89 (1987).[6]  In light of the *Turner* reasonableness

standard and the pleading requirements applicable to prisoner claims, Noe

> must include sufficient facts to indicate the plausibility that the actions of
> which he complains were *not* reasonably related to legitimate penological
> interests.  This is not to say that [he] must identify every potential
> legitimate interest and plead against it; we do not intend that pro se
> prisoners must plead, exhaustively, in the negative in order to state a claim.
> It is sufficient that he plead facts from which a plausible inference can be
> drawn that the action was not reasonably related to a legitimate penological
> interest.

*Gee*, 627 F.3d at 1188.

---

[6] Noe argues that *Turner*'s reasonableness standard does not apply to prison policies restricting outgoing mail.  *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (limiting the stricter standard in *Procunier v. Martinez*, 416 U.S. 396 (1974), to "regulations concerning outgoing correspondence").  He maintains that defendants therefore must demonstrate that such a policy furthers a compelling government interest where his outgoing mail is concerned.  We need not address this question because the district court did not err in concluding that Noe's FAC challenged the alleged name-alone content policy only as to his incoming mail.

Noe's FAC originally alleged that two incoming letters *and* one outgoing letter had been rejected under the alleged policy.  *See* R., Vol. 2 at 162, 165 (alleging the rejection of "two incoming letters" as well as a letter he sent to his private investigator).  But in response to defendants' motion to dismiss, Noe abandoned his claim regarding his outgoing mail.  *See id.* at 392 (withdrawing his claim challenging the rejection of the letter he attempted to send and stating he would file a separate complaint regarding that letter).  Noe's contentions then focused on the rejection of his incoming mail, as to which he argued that his FAC stated a free-speech violation under *Turner*.  *See id.* at 393-94 (clarifying he was challenging the policy that limits mail sent to him that contains information about another inmate); *id.* at 395-96 (arguing the applicability of the *Turner* reasonableness standard to his claim).  The MJ noted that Noe had abandoned his claim as to the third, outgoing letter and recommended that portion of Claim One be dismissed on that basis.  *See* Suppl. R., Vol. 1 at 118 n.3.  The district court adopted the MJ's recommendation in full.  *See id.* at 188.

13

Noe first argues it is impossible for him to plead facts confronting a reasonable justification for the alleged name-alone content mail policy because defendants claim such a policy does not exist. We disagree. First, Noe alleged in his FAC defendants' justifications for rejecting the two letters he claims were not permitted under a name-alone content policy. He alleged the prison rejected one letter because the sender described trying to help another inmate, and a second letter because it mentioned someone who is on parole. Noe further alleged the warden's explanation that "the letters were rejected because [i]nvestigative tools revealed information contained in the . . . correspondence advised the recipient about other incarcerated individuals and or previously incarcerated individuals serving on supervised release," R., Vol. 2 at 164 (emphasis and internal quotation marks omitted). In their motion to dismiss, defendants also proffered that the prison could rationally restrict correspondence containing information about other inmates and former inmates. *See id.* at 181-82 (referencing a concern about outside contacts acting as "go-between[s]" for inmates or "conduits" for information about other inmates). We have noted that the deficiency in a pleading may be clear given the government's proffered justifications for a policy. *See Al-Owhali v. Holder*, 687 F.3d 1236, 1241 (10th Cir. 2012).

Second, even absent a proffered justification, a prisoner must "allege[] facts that explain why the usual justifications for the complained-of acts do not apply." *Gee*, 627 F.3d at 1185. Thus, Noe must allege facts from which a plausible inference could be drawn that the challenged policy is not reasonably related to the prison's

14

interests in "maintaining safety and internal security," which are "the core functions of prison administration," *Turner*, 482 U.S. at 92.

Noe's FAC failed to include well-pleaded facts from which a plausible inference could be drawn that the alleged name-alone content policy is not reasonably related to a legitimate penological interest. He must do more than assert in a conclusory fashion that the policy is unreasonable. Thus, his statements that "[t]his policy does not relate to any legitimate penological interest. [I]t is stopping me from receiving perfectly legitimate letters. It is 'unreasonable,'" R., Vol. 2 at 163, do not suffice.

Noe points to his allegation that "defendants . . . are intentionally falsifying [his] documents," *id.* at 164, but this vague assertion included no facts indicating what documents were allegedly falsified or in what manner. As such, he failed to allege facts supporting a plausible inference that defendants violated any prison rule. *See Gee*, 627 F.3d at 1185 (noting a "claim of interference with mail ordinarily is not plausible absent factual allegations showing at least that the alleged interference violated prison rules").

Citing *Turner*, Noe argues the alleged name-only content mail policy is invalid because it is not content neutral. In *Turner*, the Supreme Court stated, "We have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." 482 U.S. at 90. But the Court later explained that, where prison administrators draw distinctions between different content "solely on the basis of

15

their potential implications for prison security, the regulations are 'neutral' in the technical sense in which [it] meant and used that term in *Turner*." *Thornburgh v. Abbott*, 490 U.S. 401, 415-16 (1989). And this court has recognized that "prison officials may regulate the content of incoming mail." *Gee*, 627 F.3d at 1188.

Finally, Noe argues the alleged name-alone content mail policy is unconstitutional under our decision in *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868 (10th Cir. 2019). Noe's reliance on that case is misplaced. The policy at issue in *Prison Legal News* was not related to incoming mail; rather, it involved a regulation, which we referred to as "name-alone content," under which prison officials flagged for potential rejection, and ultimately rejected, publications that referred to a prison inmate or staff member. *Id.* at 874. Further, we did not hold in *Prison Legal News* that the name-alone content publications policy was unconstitutional. We held that the plaintiff's claims were mooted by the prison's withdrawal of the challenged policy. *See id.* at 878, 882. Finally, Noe alleged in his FAC that the warden admitted in the *Prison Legal News* litigation that the name-alone content policy at issue in that case was not reasonably related to a legitimate penological interest. *See* R., Vol. 2 at 164; *see also Prison Legal News*, 944 F.3d at 882 (citing the current warden's declaration agreeing with a previous warden that rejection of publications under the name-alone content regulation was "improper"). But prison policies related to publications and those related to mail do not necessarily address the same safety and security concerns. Thus, the warden's position on the validity of the publication policy at issue in *Prison Legal News* is not,

16

by itself, a fact from which a plausible inference can be drawn that the prison's mail policy is not reasonably related to a legitimate penological interest.

Noe fails to show that the district court erred in dismissing Claim One for failure to state a claim.

### 2.    Claim Two – Free Speech

In Claim Two, Noe challenged a drug-interdiction mail policy limiting incoming mail to white envelopes and white paper.  This policy also bars mail that contains "materials such as glitter, stickers, lipstick, crayon or marker," "is stained or contains an oily substance," is "sprayed with fragrance," or that uses address labels. R., Vol. 2 at 232.  The policy provides that "[s]ome general correspondence will be photocopied and you will only be provided the photocopy."[7]  Noe alleged that, under this policy, he cannot receive a homemade greeting card.  If a commercial greeting card is sent in a white envelope, he will receive only a copy of the card.  But if the same commercial greeting card is sent in a colored envelope, it will be rejected.

Defendants proffered in their motion to dismiss that this policy is aimed at keeping illegal drugs out of the prison via hard-to-assess packages—a penological interest that Noe admitted is legitimate in his FAC.  Noe nonetheless alleged that this policy violates his First Amendment right to free speech because, rather than

---

[7] We quote the relevant policy as attached to defendants' motion to dismiss because Noe incorporated this policy by reference in his FAC.  *See Gee*, 627 F.3d at 1186 (noting documents a complaint incorporates by reference may be considered on a Rule 12(b)(6) motion).

rejecting and returning mail that violates the policy, the prison could instead provide him photocopies of all rejected correspondence, as they do with commercial greeting cards. The district court rejected Noe's contention that he had stated a plausible claim by pleading facts in his FAC regarding an alternative to the prison's policy. The court therefore dismissed Noe's free-speech claim in Claim Two for failure to state a claim.[8]

Noe continues to concede that the prison's drug-interdiction mail policy is related to a legitimate penological interest. *See* Aplt. Opening Br. at iii. But he contends that, under *Turner*, he pleaded a plausible First Amendment claim because he alleged an alternative to the policy—providing him copies of the rejected mail— that he maintains would fully accommodate his rights at de minimis cost to valid penological interests. We disagree that these allegations are sufficient to state a plausible claim.

Noe is correct that *Turner* set forth four factors to guide a court's inquiry into whether a prison regulation impinges on an inmate's constitutional rights, and that one of those factors is "whether ready, easy-to-implement alternatives exist that

---

[8] Once again, the district court veered from considering only the allegations in Noe's FAC, this time by crediting defendants' assertion that the prison does not make copies of all mail that violates the drug-interdiction policy, *see* Suppl. R., Vol. 1 at 127, rather than accepting as true Noe's contrary allegation pointing to a prison policy requiring that all rejected mail be photocopied, *see id.*, Vol. 2 at 167; *id.* at 205 ("In case of rejection, the offending content is reproduced and retained for a reasonable period (at least three months), to have it available if the rejection is appealed."). We do not rely on defendants' factual assertion in assessing whether Noe plausibly alleged a free-speech violation in Claim Two.

would accommodate the prisoner's rights," *Al-Owhali*, 687 F.3d at 1240 (internal quotation marks omitted). But the first factor—"whether a rational connection exists between the prison policy regulation and a legitimate governmental interest"—"is the most important," and "is not simply a consideration to be weighed but rather an essential requirement." *Id.* (internal quotation marks omitted). Moreover, although "[a]nalysis of the four *Turner* factors is necessary at the summary judgment stage, . . . in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest." *Id.* (internal quotation marks omitted). "Thus, while it is critical that a complaint address *Turner*'s core holding, the four *Turner* factors need not be part of the analysis at the pleading stage." *Id.*

Under this rubric, Noe needed to plead plausible facts supporting his claim that the policy, which precludes incoming mail using colored envelopes and other elements that could be used to conceal illegal drugs, does not serve the purpose of preventing such drugs from entering the prison. *See id.* at 1241 (stating the inmate "needed to plead some plausible facts supporting his claim that the ban on communicating with his [relatives] did not serve the purpose of preventing future terrorist activity"). Noe's allegations about an alternative process do not plausibly suggest that the prison's chosen method does not serve its intended penological purpose, which Noe concedes is legitimate. Therefore, the district court did not err in dismissing Noe's free-speech claim in Claim Two for failure to state a claim.

19

### 3.    Claim Three – Equal Protection

In Claim Three, Noe alleged that the FSA entitles him to incentives for participating in FSA programming, including additional telephone and email usage, time credits, and placement at a prison facility closer to his home.  He claimed that his exclusion from FSA incentives based upon (1) his incarceration at ADX and (2) his validated membership in the Aryan Brotherhood violates his Fifth Amendment right to equal protection.  The district court held that Noe alleged neither the deprivation of a fundamental right nor membership in a protected class; therefore, the question was whether the prison treated him differently than other similarly situated inmates without any rational basis.  *See Vacco v. Quill*, 521 U.S. 793, 799 (1997) ("If a . . . classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold it so long as it bears a rational relation to some legitimate end." (brackets and internal quotation marks omitted)).

Because Noe did not allege any facts in his FAC demonstrating that other similarly situated inmates were receiving FSA incentives, the court held he failed to plead a plausible equal-protection claim.  In particular, the court construed Noe's FAC as alleging that all ADX inmates—both members and nonmembers of the Aryan Brotherhood—are being denied the incentives he seeks.  But Noe failed to plead facts showing there are no relevant differences between inmates housed elsewhere who are receiving FSA incentives and inmates housed at ADX who allegedly are not.  The district court therefore dismissed Noe's equal-protection claim for failure to state a claim under Rule 12(b)(6).

20

### a.    Standing

Defendants raise two contentions regarding Noe's standing to bring his equal-protection claim. Although the district court did not expressly address these questions, because standing is jurisdictional, we will address them on appeal. *See Bd. of Cnty. Comm'rs v. Geringer*, 297 F.3d 1108, 1111 (10th Cir. 2002). Defendants argue (1) Noe lacked standing because, at the time he filed his FAC, the BOP was not yet obliged to implement FSA programming, and (2) to the extent Noe sought time credits under the FSA, he lacked standing because his conviction makes him ineligible for such credits. We reject these propositions and conclude that Noe had standing to bring his equal-protection claim.

First, Noe alleged in his equal-protection claim that some inmates within the BOP were already receiving FSA incentives, while the warden at ADX has advised Noe that, based on specified grounds, he is ineligible for, and therefore will never receive, those incentives. Absent contrary jurisdictional findings of fact by the district court, we accept the truth of these allegations, which sufficiently set forth an injury in fact, traceable to the warden, that could be redressed by a favorable decision by this court that Noe's blanket exclusion from FSA incentives on the alleged bases violates his right to equal protection. *See Colo. Outfitters Ass'n*, 823 F.3d at 543.

Defendants further contend that Noe lacks standing specifically to seek time credits under the FSA via his equal-protection claim because his conviction for conspiring to distribute methamphetamine makes him categorically ineligible to earn such credits. Defendants assert that any injury Noe may claim is therefore not fairly

traceable to any action by the BOP, nor would it be redressable by a favorable

judicial decision. *See id.* at 543-44. We disagree.

The FSA provides that "[a] prisoner is ineligible to receive time credits" if he

"is serving a sentence for a conviction under any of the following provisions of law."

18 U.S.C. § 3632(d)(4)(D). The subsequent list of disqualifying convictions includes

21 U.S.C. § 841(b)(1)(A)(viii) "relating to . . . distributing . . . methamphetamine . . .

if the sentencing court finds that the offender was a . . . leader . . . in the offense, as

determined under the guidelines promulgated by the United States Sentencing

Commission." 18 U.S.C. § 3632(d)(4)(D)(lxvii). The list of disqualifying

convictions does not include 21 U.S.C. § 846, conspiring to commit a

controlled-substance offense.

Defendants argue that Noe was convicted under § 841(b)(1)(A) based upon

references to that statutory section in his judgment of conviction and in the decision

affirming his conviction. *See* R., Vol. 2 at 384 (judgment of conviction on Count 1,

"Drug Conspiracy," referencing both § 841(b)(1)(A) and § 846); *United States v.*

*Noe*, 411 F.3d 878, 883 (8th Cir. 2005) ("A jury found Peter Noe guilty of conspiring

to distribute methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. . . .").

Noe concedes that he had the requisite leadership role as to his conspiracy

conviction, but he maintains that he was convicted only under § 846 of conspiring to

distribute methamphetamine.

Noe is correct. His judgment indicates that he was convicted of conspiracy.

The decision affirming that conviction stated that his conviction was for conspiracy

to distribute methamphetamine.  Neither record indicates that Noe was convicted of a substantive offense under § 841(b)(1)(A).  Contrary to defendants' assertion, "[t]he inclusion of statutory references to both the conspiracy statute and the sections describing the object of the conspiracy does not transform the judgment into one that describes a conviction of the substantive crime."  *United States v. Warren*, 5 F.4th 1078, 1081 (9th Cir. 2021).  Thus, Noe's judgment "cannot properly be read . . . to suggest that [he] stands convicted of the crime that was the object of the conspiracy."  *Id.*

Moreover, "the law is well settled that commission of a substantive offense and a conspiracy to commit it are separate crimes."  *United States v. Johnson*, 977 F.2d 1360, 1371 (10th Cir. 1992) (brackets and quotation marks omitted).  This is true as to §§ 841 and 846.  *See id.* at 1371-72.  Indeed, distribution of a controlled substance requires the element of distribution, while conspiracy to commit such an offense "under § 846 does not require an overt act, let alone . . . distribution."  *United States v. Horn*, 946 F.2d 738, 745 (10th Cir. 1991).  Thus, Noe's conspiracy conviction under § 846 does not equate to him "serving a sentence for a conviction under" § 841(b)(1)(A), pursuant to § 3632(d)(4)(D)(lxvii).  *See Warren*, 5 F.4th at 1081 n.2 (construing the defendant's judgment as reflecting that he committed a single conspiracy offense, rather than the underlying substantive offense that would make him ineligible for time credits under the FSA).

23

### b. Failure to Plead a Plausible Claim for Relief

Having determined Noe had standing to bring his equal-protection claim, we next address the merits of that claim. Noe initially contends that the district court erred in holding he did not allege a race-based equal-protection claim due to his exclusion from FSA incentives because he is a member of the Aryan Brotherhood prison gang. But as construed by the district court, Noe ultimately alleged in his FAC that all inmates at ADX are being denied access to FSA incentives—whether or not they are white, and whether or not they are members of a prison gang with, as Noe alleged, "pro white views," R., Vol. 2 at 171. He also did not allege that all members of gangs with such racist views across all BOP prisons are ineligible for FSA incentives.[9] Thus, his claim of race-based discrimination is belied by his own allegations. Noe also did not allege any facts plausibly demonstrating any decision motivated by racial animus, as required for a race-based equal-protection claim. *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018).

Noe further contends that the district court erred in dismissing his equal-protection claim based upon his allegation that ADX inmates are excluded from FSA incentives while inmates housed in other prisons allegedly are not. He

---

[9] We note that Noe cites no authority for his racial-classification premise based upon his prison gang's racist beliefs, and we have found none. *See, e.g., Davis v. City of Aransas Pass*, No. 2:13-CV-363, 2014 WL 2112701, at *1 (S.D. Tex. May 20, 2014) (unpublished) ("The term 'white supremacist' is not a racial classification."), *aff'd*, 605 F. App'x 429 (5th Cir. 2015).

maintains that the court's holding is based entirely on its incorrect finding that he is not classified as a general population inmate. We disagree.

The district court did state that Noe "is not categorized as a general population inmate," Suppl. R., Vol. 1 at 186, but its analysis was ultimately based on the significant differences between inmates housed at other prisons as compared to ADX. We have noted that ADX is unique in the federal prison system, being "the most restrictive and secure prison operated by the BOP" that is "reserved for inmates who require the highest custody level that can be assigned to an inmate." *Rezaq v. Nalley*, 677 F.3d 1001, 1005 (10th Cir. 2012) (internal quotation marks omitted). Thus, although Noe may be considered a "general population" inmate at ADX, in contrast to other federal prisons, general population inmates at ADX "spend twenty-three hours a day confined to their cells." *Id.*

Against this backdrop, the district court did not err in holding that Noe failed to allege facts demonstrating that there are non-ADX inmates receiving FSA incentives "who are similar in every relevant respect" to the inmates at ADX allegedly denied such incentives. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). He did not, as required, plausibly allege "that there are *no* relevant differences between him and other inmates that reasonably might account for their different treatment." *Id.* (emphasis added). In light of the stark differences between inmates at ADX and inmates at other BOP prisons, *see Rezaq*, 677 F.3d at 1005, Noe simply could not plausibly allege such facts, *see Templeman*, 16 F.3d at 371 (concluding "it is clearly baseless to claim that there are other inmates who are

25

similar in every relevant respect" (internal quotation marks omitted)).[10]  The district court did not err in dismissing Noe's equal protection claim in Claim Three for failure to state a claim.

## III.    Conclusion

The district court's judgment is affirmed but we remand to the district court only for the court to amend its judgment to reflect that its dismissal of Noe's due-process claims for lack of subject matter jurisdiction is without prejudice.  Noe's motion to appoint counsel is denied as moot.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[10] We therefore need not address Noe's contention that the prison's alleged name-only content mail policy precluded him from being able to fulfill this pleading requirement because he could not mention another inmate's name in a pleading mailed to the court.

26